# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3079

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Ramiro R. Urbina, | * | |
| | * | |
| Appellant. | * | |

_____          Appeal from the United States
                     District Court for the
No. 04-3142          Western District of Missouri.

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Ramiro R. Urbina, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: June 23, 2005
Filed: December 9, 2005

_____

Before ARNOLD, McMILLIAN, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Following a jury trial, Ramiro Urbina was convicted of one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841. The jury also found that the government proved two counts of criminal forfeiture, pursuant to 21 U.S.C. § 853. The district court sentenced Urbina to 300 months' imprisonment. He appeals his conviction and sentence, and the government cross-appeals the sentence. We affirm the conviction and remand the case for resentencing in light of *United States v. Booker*, 125 S.Ct. 738 (2005).

I.

Urbina's first point on appeal challenges the district court's denial of his motion to suppress evidence. We relate the facts as found by the district court, adopting the report and recommendation of a magistrate judge. On April 1, 2003, at approximately 10 a.m., Missouri State Highway Patrolman Corporal Thomas Hall observed a gold pickup truck pulling a horse trailer on I-44 in Lawrence County, Missouri. Hall stopped the truck after observing the vehicle cross the center line of traffic on at least four occasions. Corporal Gary Braden, also of the Highway Patrol, arrived immediately after the stop. Hall asked Urbina, the driver, if the wind was blowing his vehicle over the line, and Urbina replied, "It may be, but I'm tired too." Urbina told the officer that he was en route to Dayton, Ohio, to pick up a horse for a friend.

Hall noticed an auxiliary gas tank in the back of the truck. He asked Urbina the purpose of the tank, and Urbina responded that he used it as an extra tank and hooked it up to the battery. Hall saw no wiring connecting the tank to the battery.

Urbina was unable to produce a driver's license, but did offer Hall an Oregon identification card. Hall asked Urbina to accompany him back to the patrol car, where he determined that the Oregon driver's license was suspended. While in the patrol

car, Urbina said that the truck belonged to his brother-in-law, but that he, Urbina, owned the trailer and had purchased it specifically for this trip. Urbina acknowledged that he did not own any horses, and then said, contradicting his earlier explanation, that he was going to Ohio to purchase an automobile. Hall asked Urbina if there was anything illegal in the truck, and Urbina said no. Hall then asked for consent to search the truck, and Urbina agreed. A drug dog was in the back seat of the patrol car during the stop, but it was never used to investigate the vehicle, because Urbina consented to the search.

After examining the horse trailer and the cab of the truck without finding contraband, Hall and Braden examined the bed of the truck. Around the auxiliary tank, they observed scratch marks that appeared fresh. Hall also testified that the tank was not fastened to the bed of the truck. The officers tipped the tank and heard not the sloshing sound one might expect from gasoline, but rather a dull thud, as if nonmetallic objects were moving around inside. Hall noticed that on the bottom of the tank, there was fresh paint and putty surrounding a portion of the tank that had been cut out and then reattached. Hall stated that in his experience, there normally is no opening on the bottom of an auxiliary gas tank.

Both troopers had been involved in stops in which narcotics had been hidden in auxiliary gas tanks, and their suspicions were raised by what they had seen of the tank on Urbina's vehicle. Braden then kicked in the access panel on the tank with his boot and observed six bundles in the tank. He pried open the tank further with a screwdriver and discovered that the bundles contained cocaine.

II.

A.

Urbina first argues that he did not voluntarily consent to a search. The district court recognized that Urbina had raised this issue in his motion to suppress, and addressed the issue, noting that it was undisputed that Urbina answered "yes" when asked for consent and finding no evidence of any coercion by the troopers or the presence of the drug dog. We thus reject the government's contention that the issue is not preserved, and we review the district court's determination that consent was voluntary for clear error. *United States v. Poulack*, 236 F.3d 932, 936 (8th Cir. 2001).

To determine if consent is freely and voluntarily given, we consider the totality of the circumstances. *Schneckloth v. Bustamante*, 412 U.S. 218, 227 (1973). Characteristics of a defendant relevant to the voluntariness of his consent include (1) his age, (2) his general intelligence and education, (3) whether he was intoxicated or under the influence of drugs when he consented, (4) whether he consented after being informed of his right to withhold consent or of his *Miranda* rights, and (5) whether, because he had been previously arrested, he was aware of the protections afforded to suspected criminals by the legal system. *United States v. Chaidez*, 906 F.2d 377, 381 (8th Cir. 1990). Urbina also points to the factors we have cited for use in examining the environment in which consent was given: whether the defendant (1) was detained and questioned for a long or short time, (2) was threatened, physically intimidated, or punished by police, (3) relied upon promises or misrepresentations made by the police, (4) was in custody or under arrest when the consent was given, (5) was in a public or secluded place, or (6) either objected to the search or stood by silently while the search occurred. *Id.*

Urbina argues that the circumstances surrounding his consent undermine its voluntariness. He claims that Hall did not advise him of his right not to consent, that

he was taken to a relatively secluded place (the patrol car) for no reason, that a German Shepherd was in the back seat of the patrol car, that Hall told Urbina neither that he suspected he was a drug courier nor why he wanted to search the vehicle, that Urbina was not requested to aid the search, that Urbina did not assist the search, that Urbina was not told that he could revoke his consent at any time, and that there was no visible evidence of contraband.

We conclude that adequate evidence supports the district court's conclusion that Urbina's consent was voluntarily given, and we see no convincing evidence to the contrary. The interior of a police patrol car on the shoulder of a public highway during the day is not a secluded location. *Chaidez*, 906 F.2d at 382; *see also United States v. Mancias*, 350 F.3d 800, 806 (8th Cir. 2003). The district court specifically found that there was no evidence of any coercion by the presence of the dog, and we do not believe that the mere presence of a dog in the back seat of the patrol car requires a finding that Urbina was coerced into giving consent. *See United States v. Malone*, 886 F.2d 1162, 1165-66 (9th Cir. 1989). The lack of visible evidence of contraband and Hall's failure to inform Urbina of his suspicions are not relevant to determining whether the totality of the circumstances indicates that consent was voluntary.

Even if Urbina was unaware of his right to withhold or revoke consent, this is another case in which "other considerations set out in *Chaidez* overwhelmingly favor the district court's finding" that Urbina's consent was voluntary. *United States v. Thompson*, 408 F.3d 994, 996 (8th Cir. 2005). Urbina is an adult with a lengthy criminal record. The traffic stop had lasted only a few minutes before Hall asked Urbina for consent to search. There is no evidence that the officer treated Urbina in anything other than a professional manner. The district court's finding that Urbina's consent was voluntary was not clearly erroneous.

-5-

Urbina also argues that the evidence should have been suppressed because the patrolmen exceeded the scope of his consent when they used force to open his auxiliary gas tank. We measure the scope of consent under the Fourth Amendment using a standard of objective reasonableness, considering what an objectively reasonable person would have understood the consent to include. *United States v. Fleck*, 413 F.3d 883, 892 (8th Cir. 2005). We believe a reasonable person would have understood Urbina's consent to search the vehicle to include consent to examine and open unlocked containers within the vehicle, *see Florida v. Jimeno*, 500 U.S. 248, 251-52 (1991), but Urbina suggests that the officers' efforts to access the interior of the gas tank went beyond opening a container to the point of destroying it, and that the latter is outside the scope of an objectively reasonable interpretation of his consent. *See United States v. Alverez*, 235 F.3d 1086, 1088-89 (8th Cir. 2000). We need not resolve this question, because by the time the officers removed the panel, they had probable cause to search the tank. The sound of objects moving in the tank gave the officers probable cause to believe that the gas tank contained contraband, and probable cause is sufficient to justify the warrantless search of an automobile or a container therein, including the destruction, if necessary, of the container. *Id.* at 1089.

B.

Urbina next argues that the district court erred by not granting a mistrial when the government, in its opening statement, made dramatic reference to Urbina's flight from police in a stolen car following his arrest. We recognize the trial court's broad discretion in controlling the direction of opening statements and closing arguments, and we will not reverse that court's decision absent a showing of abuse of discretion. *United States v. Conrad*, 320 F.3d 851, 855 (8th Cir. 2003). In this context, the district court abuses its discretion if a prosecutor's improper comments "prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." *United States v. Hernandez*, 779 F.2d 456, 458 (8th Cir. 1985).

The record indicates that the district court, in response to Urbina's motion *in limine*, had told the parties off the record at a conference in chambers that it would not allow the government to discuss certain details of Urbina's flight. The government apparently misunderstood the court's decision and described some details of the flight, such as the speed of the chase, at the start of its opening statement. Urbina objected. After a discussion with counsel, the court indicated that it may not have been as specific about the ruling as it should have been. Urbina moved both for a mistrial and for a curative instruction to the jury. The district court declined to grant a mistrial but instructed the jury to disregard the statements. The court also clarified that the government would be permitted to discuss Urbina's acquisition of the car and his flight, but could not talk about the speeds at which Urbina drove during his flight or mention that he was convicted of fleeing by vehicle and reckless driving in Indiana state court.

Assuming, *arguendo*, that the prosecutor's comments were improper, Urbina still must establish that the comments prejudicially affected his substantial rights so as to deprive him of a fair trial. To determine the effect of alleged prosecutorial misconduct, we consider the cumulative effect of the misconduct, the strength of the evidence against the defendant, and the curative actions taken by the district court. *United States v. Flores-Mireles*, 112 F.3d 337, 341 (8th Cir. 1997). In this case, the cumulative effect of the misconduct was minimal. While the prosecutor mentioned specific details the district court believed he ought not have described, the general subject of his comments – Urbina's flight – was deemed admissible by the district court, and evidence of the flight was introduced in the course of the trial. The evidence against Urbina was strong: he had six bricks of cocaine concealed in a container in his truck, he had provided inconsistent stories as to the purpose of his trip to police, and he agreed to cooperate and arrange a controlled delivery of the cocaine – cooperation that ended when he fled from the agents escorting him to his destination. Finally, the district court offered an immediate curative instruction at Urbina's request, which "further served to obviate the claimed error." *United States*

*v. Guerra*, 113 F.3d 809, 816 (8th Cir. 1997).  We do not believe the comments, even assuming they were improper, reasonably could be viewed as having affected the jury's verdict.  The district court therefore did not abuse its discretion in denying Urbina's motion for mistrial.

C.

Urbina also argues that the district court erred in admitting the government's expert testimony regarding his "unknowing courier" defense and repeated testimony about his flight.  We review the district court's evidentiary rulings for abuse of discretion.  *Fleck*, 413 F.3d at 890.

The government presented Agent Mark Hooten of the Drug Enforcement Administration to testify, *inter alia*, that in his experience he had never seen a drug dealer entrust as large a quantity of drugs as were found in Urbina's auxiliary gas tank to a courier who was not aware of what he was transporting.  Urbina argues that this evidence was inadmissible under Federal Rule of Evidence 704(b), which prohibits experts from stating an opinion as to whether the defendant had the requisite mental state for the crime charged, and that the government improperly sought through this evidence to establish Urbina's guilt by showing that his characteristics matched the profile of a knowing drug courier.  *See United States v. Vasquez*, 213 F.3d 425, 427 (8th Cir. 2000).  We recently rejected a similar claim in *United States v. Martinez*. 358 F.3d 1005, 1010 (8th Cir. 2004), and although the claim in *Martinez* was reviewed for plain error rather than for abuse of discretion, we believe the reasoning dictates the same conclusion here.

Expert testimony "to the effect that drug traffickers do not typically use couriers who are unaware they are transporting drugs" is permissible where one theory of the defense is that the defendant was unaware of the presence of the drugs.  *Id.* (internal quotation omitted).  In this case, one of Urbina's defenses was that he did not know

that the cocaine was present in the gas tank. We have also held generally that "[a] district court has discretion to allow law enforcement officials to testify as experts concerning the modus operandi of drug dealers in areas concerning activities which are not something with which most jurors are familiar." *United States v. Brown*, 110 F.3d 605, 610 (8th Cir. 1997) (internal quotation omitted). And "a court can allow opinion testimony if the expert's specialized knowledge is helpful to the jury to understand the evidence or determine a fact in issue, even if the opinion embraces an ultimate issue to be decided by the jury." *Id.* In this case, the district court explicitly warned that it would sustain Urbina's objection if the prosecution attempted to elicit the expert's opinion on the ultimate issue of Urbina's knowledge, and the agent did not offer a view on that issue. We note as well that Urbina had an opportunity to subject Agent Hooten to a thorough cross-examination. The district court thus did not abuse its discretion in admitting the agent's testimony.

Urbina also objects to the admission of testimony about his flight from law enforcement agents in the course of an attempted controlled delivery following his arrest. According to Urbina, the district court allowed unnecessarily cumulative evidence on the issue, such that the chase was unduly emphasized to the jury. Evidence of flight is generally admissible, because it is probative of a defendant's consciousness of guilt. *United States v. Hankins*, 931 F.2d 1256, 1261 (8th Cir. 1991). While three witnesses did testify regarding some aspect of Urbina's flight, each testified about a different portion of the flight. We do not believe that the district court abused its discretion in admitting the evidence.

III.

Urbina argues that the district court erred by rejecting his argument that *Blakely v. Washington*, 542 U.S. 296 (2004), rendered the United States Sentencing Guidelines unconstitutional. The government cross-appeals, arguing that the district court erred by holding that it was not permitted to adjust Urbina's base offense level

for obstruction of justice under USSG § 3C1.1 and reckless endangerment during flight under USSG § 3C1.2. Both parties request a remand for resentencing.

The district court denied Urbina's *Blakely* objection regarding his criminal history score, but declined to include the adjustments for obstruction of justice and reckless endangerment during flight when calculating the offense level. The court explained:

> [T]his is a very difficult decision for me to make because I heard the evidence and I have absolutely no doubt in my mind what Mr. Urbina did. He took the car, he drove the wrong way on the interstate, drove at a high speed. All of that came in as evidence at trial. There was absolutely no evidence in opposition to that. It was basically undisputed. And it's clear to me what happened. And I have no doubt that had we submitted that to the jury, they would have found the same thing. But we didn't. And *Blakely*, by my interpretation, puts me in a position where if I'm following *Blakely* and the guidelines, at that point I have to deny the enhancements.

(S. Tr. at 15). The presentence investigation report included the enhancements in its calculation and recommended a sentencing range of 324 to 405 months. In light of its interpretation of *Blakely*, however, the district court calculated a total offense level of 32 (without the adjustments), and a criminal history of VI, resulting in a sentencing range of 210 to 262 months. Based on this court's decision in *United States v. Mooney*, No. 02-3388, slip op. (8th Cir. July 23, 2004), *vacated*, No. 02-3388, 2004 WL 1636960 (8th Cir. Aug. 6, 2004), the court then treated the guideline range as advisory, and imposed a sentence of 300 months' imprisonment. In the alternative, considering the guidelines as mandatory, the court imposed a sentence of 262 months' imprisonment.

We agree with the parties that resentencing is warranted. Since Urbina was sentenced, the Supreme Court decided *Booker*, which declared the guidelines

"effectively advisory," but which permits judicial fact-finding and application of guideline adjustments, so long as the sentencing range is not binding on the sentencing court. *United States v. Killingsworth*, 413 F.3d 760, 764 (8th Cir. 2005). Given the uncertainty in the law at the time of sentencing, although the district court fashioned a sentence treating the guidelines as "advisory," the court did not calculate and take into account a correct guideline range for Urbina under the scheme announced in *Booker*. An objection to the sentencing procedure was preserved, and we conclude that the case should be remanded for resentencing.

\*     \*     \*

For the foregoing reasons, we affirm Urbina's conviction, but vacate the sentence and remand for resentencing in light of *Booker*.

_____