Filed 9/15/11 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2011 ND 182

State of North Dakota, Plaintiff and Appellee

v.

Timothy John Deviley, Defendant and Appellant

No. 20100289

State of North Dakota, Plaintiff and Appellee

v.

Ryan Steven Lee, Defendant and Appellant

No. 20100326

Appeals from the District Court of Morton County, South Central Judicial District, the Honorable Robert O. Wefald, Judge.

AFFIRMED.

Opinion of the Court by Sandstrom, Justice.

Julie A. Lawyer (argued), Assistant Attorney General, U.S. Attorney’s Office, 220 East Rosser Avenue, P.O. Box 699, Bismarck, ND 58502-0699, for plaintiff and appellee.

Carey A. Goetz (argued), P.O. Box 1874, Bismarck, ND 58502-1874, for defendant and appellant Timothy John Deviley.

Chad R. McCabe (argued), 402 East Main Avenue, Suite 100, Bismarck, ND 58501, for defendant and appellant Ryan Steven Lee.

State v. Deviley

Nos. 20100289 & 20100326

 

Sandstrom, Justice.

[¶1] Timothy Deviley and Ryan Lee appeal from the criminal judgments entered on their conditional guilty pleas for possession of marijuana with intent to deliver and reserving the right to appeal the order denying their motions to suppress evidence.  Deviley and Lee argue they were seized in violation of the Fourth Amendment because they were detained without reasonable and articulable suspicion they were engaged in criminal activity.  Lee further argues the length of time for the drug dog to arrive created a de facto arrest.  Lee also argues the district court erred by denying a motion to reduce the charge against him because of inconsistent statutes.  We affirm the district court’s order denying the motions to suppress evidence, concluding there was reasonable and articulable suspicion the defendants were engaged in criminal activity, and there was no unreasonable delay creating a de facto arrest.  Further, we conclude Lee was correctly charged with a Class A felony under N.D.C.C. § 19-03.1-

23.1(1)(c)(11), and affirm the criminal judgments.

 

I

[¶2] In November 2010, Lee was driving a pickup on Interstate 94 when he was stopped for speeding by a North Dakota Highway Patrol officer.  Deviley was a passenger in the pickup.  The officer testified he asked Lee to come to the patrol vehicle while he identified Lee and checked for outstanding warrants.

[¶3] During this time, the officer questioned Lee about his travel plans and about Deviley.  The officer testified in his deposition that there were numerous things in this conversation that made him suspicious:

Some of the suspicious things were he’s riding with this person that he says is a friend of his.  He doesn’t know how he really got out there, how he came to be with this person.  He doesn’t know if he goes to school in Minneapolis.  We’re talking about a road trip from the West Coast to North Dakota with a friend of his, and he knows very little about him or how he got to be with him.

According to the officer, Lee was unusually nervous, which he exhibited by “[t]he way he was acting, moving, breathing, the pulse, the way he answered questions, the shaky voice . . . .”

[¶4] The officer testified to further observations that aroused his suspicion.  While talking with Deviley and Lee, he noticed an open energy drink in the vehicle and noted the men were carrying a minimal amount of luggage.  The latter observation was at odds with Lee’s stated plans of coming from California to spend the winter in Minnesota with his parents.  Additionally, the officer testified that while Lee waited in the patrol vehicle, he approached the pickup and questioned Deviley about their travel plans.  Deviley’s stated plans were inconsistent with what Lee had told the officer.  According to the officer, Lee had told him their destination was Minnesota, but Deviley told him he was going to get dropped off in Wisconsin.

[¶5] The officer testified that after speaking with Deviley, he returned to his patrol car and told Lee he was “good to go.”  He then asked, however, if he could search Lee’s pickup.  Lee refused, but in a manner which the officer again characterized as “nervous.”  The officer testified, “I told Mr. Lee due to his nervousness, his story, I’d be calling a canine to the scene.”  Deviley and Lee were told not to enter the pickup until after the canine unit had arrived and completed its task.  After a twenty-minute wait, an officer arrived with the canine, and according to both officers, indicated the scent of controlled substances.  The officers inspected the various compartments in the pickup and found ninety-five pounds of marijuana.

[¶6] Deviley and Lee each were charged with a Class A felony for possession of marijuana with intent to deliver.  Both men moved to suppress the marijuana evidence, arguing they were illegally seized because the officer lacked reasonable and articulable suspicion that they were engaged in criminal activity.  In the district court, they argued the seizure became a de facto arrest because they were not free to leave and twenty minutes was an unreasonable length of time to be detained while waiting for the canine unit to arrive.  The district court denied their motions to suppress.  Deviley and Lee moved to reduce the charges against them, arguing the charges were based upon inconsistent statutes.  The district court denied the motions to reduce the charges.  Deviley and Lee then conditionally pled guilty to the charges, reserving the right to appeal the district court’s denial of their motions to suppress the marijuana evidence.  Additionally, Lee appeals the court’s denial of his motion to reduce the charge against him.

 

II

[¶7] The Fourth Amendment of the United States Constitution protects individuals from unreasonable searches and seizures.  Deviley and Lee argue they were seized without reasonable suspicion of criminal activity after Lee was issued a warning ticket for speeding and the district court erred in denying their motions to suppress the marijuana evidence obtained after this allegedly illegal seizure.

[¶8] The standard of review for pre-trial suppression motions is well-established:

A trial court’s findings of fact in preliminary proceedings of a criminal case will not be reversed if, after the conflicts in the testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the trial court’s findings, and the decision is not contrary to the manifest weight of the evidence.  We do not conduct a de novo review.  We evaluate the evidence presented to see, based on the standard of review, if it supports the findings of fact.

City of Fargo v. Thompson
, 520 N.W.2d 578, 581 (N.D. 1994) (citations omitted).  Our review in this case is limited to whether there was sufficient and competent evidence showing that  the officer had reasonable and articulable suspicion of criminal activity to detain Deviley and Lee and search their vehicle.  We have explained that the existence of reasonable suspicion is examined using an objective standard:

To determine whether a reasonable suspicion exists, we consider the totality of the circumstances and apply an objective standard, taking into consideration the inferences and deductions an investigating officer would make based on the officer’s training and experience.  The question is whether a reasonable person in the officer’s position would be justified by some objective manifestation to suspect the defendant was, or was about to be, engaged in unlawful activity.  Whether the facts support a reasonable and articulable suspicion is a question of law . . . .

State v. Franzen
, 2010 ND 244, ¶ 12, 792 N.W.2d 533 (quotations and citations omitted).

[¶9] Deviley and Lee concede the initial stop of the vehicle for speeding was proper.  Traffic violations justify a stop by police officers.  
Whren v. United States
, 517 U.S. 806, 819 (1996).  “An officer may detain an individual at the scene of a traffic stop for a reasonable period of time necessary for the officer to complete his duties resulting from the traffic stop . . . .”  
Franzen
, 2010 ND 244, ¶ 8, 792 N.W.2d 533.  “The investigative detention may continue as long as reasonably necessary to conduct [duties resulting from a traffic stop] and to issue a warning or citation.”  
Id.
 (quotations omitted).  The officer may request that the individual wait in the patrol car during this time.  
State v. Fields
, 2003 ND 81, ¶ 8, 662 N.W.2d 242.  The Fourth Amendment of the United States Constitution is violated by the continued seizure of a traffic violator after the purposes of the initial traffic stop are completed, unless the officer has reasonable and articulable suspicion that criminal activity is afoot.  
Franzen
, at ¶ 9.

[¶10] The district court found Deviley and Lee were seized within the meaning of the Fourth Amendment after the officer told Lee he was “good to go.”  “An individual is seized within the meaning of the Fourth Amendment if, in view of all [the] surrounding circumstances, a reasonable person would have believed he or she was not free to leave the scene.”  
Franzen
, 2010 ND 244, ¶ 11, 792 N.W.2d 533 (quotation omitted); 
see also
 
United States v. Mendenhall
, 446 U.S. 544, 554 (1980).  In 
Fields
, this Court noted the officer completed his duties related to a proper traffic stop when he issued Fields a citation for expired registration tabs, said goodbye, and started walking back to his vehicle.  2003 ND 81, ¶ 9, 662 N.W.2d 242.  Because the purposes of the stop had been completed, we concluded Fields was seized when the officer asked him to wait outside his vehicle until a drug-sniffing canine unit arrived.  
Id.
 at ¶ 12.  In this case, the officer questioned Deviley and Lee, issued Lee a warning ticket for speeding, returned his documentation, and said “you’re good to go.”  At this point, the legitimate investigative purposes related to the traffic stop for speeding were completed.  The district court did not err in finding Deviley and Lee were seized after Lee was told he was “good to go.”  The issue is whether there was sufficient and competent evidence in the record for the district court to conclude the officer had reasonable suspicion of criminal activity to justify this seizure.

[¶11] In its order denying the motions to suppress evidence, the district court noted seven observations made by the officer prior to his detaining Deviley and Lee and calling in the canine unit:

1) nervous behavior, to include the heavy breathing, strong pulse, and shaky voice; 2) the inconsistencies in the travel plans given by Lee and Deviley; 3) the open energy drink; 4) Lee telling the Trooper he was moving to Oregon to start a business but was travelling to Minneapolis to spend the winter visiting family and not working; 5) the presence of luggage to last a week and not several months; 6) Lee indicating that Deviley was his friend but not knowing much information about him; and [7]) the continued display of nervousness by Lee to include the heavy breathing, strong pulse, and shaky voice that did not diminish throughout the duration of the stop as the Trooper usually observes from the general motoring public.

The officer testified that on the basis of these observations, he was “suspicious with the totality of the stop,” though his testimony reflected he may have relied on certain observations more than others.  The officer took care to record all of these observations, and we remain mindful that an officer’s subjective basis for action does not vitiate objective reasonable suspicion or probable cause.  
Zimmerman v. N.D. Dep’t of Transp.
, 543 N.W.2d 479, 482-83 (N.D. 1996).

[¶12] The totality of the circumstances must be considered in deciding whether reasonable suspicion exists.  
City of Fargo v. Ovind
, 1998 ND 69, ¶ 8, 575 N.W.2d 901.  In his testimony, the officer made numerous references to what he considered Lee’s unusually nervous behavior.  “Nervous, evasive behavior is a pertinent factor in determining reasonable suspicion.”  
State v. Heitzmann
, 2001 ND 136, ¶ 15, 632 N.W.2d 1.  The officer also testified he was suspicious of the incomplete and inconsistent stories given by Deviley and Lee regarding their travel arrangement and their destination.  “Inconsistencies about the details of a trip is a relevant factor in deciding whether reasonable suspicion exists.”  
Franzen
, 2010 ND 244, ¶ 15, 792 N.W.2d 533.  Although this evidence was disputed by Deviley and Lee, under our standard of review, we “resolv[e] conflicting evidence in favor of affirmance.”  
Fields
, 2003 ND 81, ¶ 6, 662 N.W.2d 242.

[¶13] Further, the officer noted the presence of an energy drink in the pickup and the minimal amount of luggage carried by Deviley and Lee.  The officer explained they are among the things he is trained to look for in cases of suspected drug smuggling.  He testified he is directed by his training to look for “items they may have with them, luggage, multiple cell phones, energy drinks, et cetera.”  The existence of reasonable suspicion is assessed by “taking into account the inferences and deductions that an investigating officer would make that may elude a layperson.”  
Fields
, 2003 ND 81, ¶ 13, 662 N.W.2d 242.  On the basis of his training and experience, the officer’s suspicions could reasonably have been increased by the presence of the energy drink and the minimal amount of luggage.

[¶14] The district court concluded that the officer, relying on his training and experience, “properly ‘read’ both Lee and Deviley and made proper deductions from all of the circumstances he observed and the statements made to him . . . .”  There is ample, competent evidence in the record reflecting the observations that raised reasonable suspicion for the officer.  Accordingly, on the basis of the totality of the circumstances, the officer was justified in detaining Deviley and Lee until the canine unit arrived for further investigation.

[¶15] Lee, primarily relying on 
U.S. v. Bloomfield
, 40 F.3d 910 (8th Cir. 1994), also argues that the additional time for the drug dog to arrive created a de facto arrest requiring probable cause.  In 
Bloomfield
, 40 F.3d at 917, the Eighth Circuit held a substantially longer delay of one hour was not unreasonable.  In 
Fields
, 2003 ND 81, ¶¶ 12-13, 662 N.W.2d 242, this Court held that reasonable and articulable suspicion was the correct standard for a half-hour wait for a drug dog.

[¶16] The evidence is sufficient to support the district court’s denial of Deviley and Lee’s motions to suppress, and we affirm the district court’s order denying these motions.

 

III

[¶17] Lee appeals from the district court’s order denying his motion to reduce his possession of marijuana with intent to deliver charge from a Class A to a Class B felony.

[¶18] Lee’s argument stems from two allegedly contradictory statutes in North Dakota’s Uniform Controlled Substances Act.  Lee was charged with possession of marijuana with intent to deliver under N.D.C.C. § 19-03.1-23(1)(b).  Section 19-03.1-

23.1, N.D.C.C., provides for increased penalties when certain aggravating factors are present.  Directly at issue in this case is N.D.C.C. § 19-03.1-23.1(1)(c)(11), which provides:

A person who violates section 19-03.1-23 is subject to the penalties provided in subsection 2 if:

. . . .

c. The offense involved:

. . . .

(11) Five hundred grams or more of marijuana[.]

Under the aggravating factors in N.D.C.C. § 19-03.1-23.1(1)(c)(11), the fact that Lee was transporting ninety-five pounds of marijuana requires that his Class B felony charge be elevated to a Class A felony charge.

[¶19] The source of confusion, and the basis for Lee’s argument, is that N.D.C.C. § 19-03.1-23(1)(b) contains its own enhancement provision.  This statute provides, in part:

Any person who violates this subsection with respect to:

b. Any other controlled substance classified in schedule I, II, or III, is guilty of a class B felony, 
except that any person who delivers one hundred pounds [45.36 kilograms] or more of marijuana is guilty of a class A felony
.  Except for a person who manufactures, delivers, or possesses with the intent to manufacture or deliver marijuana, any person found guilty under this subdivision must be sentenced:

(1) For a second offense, to imprisonment for at least three years.

(2) For a third or subsequent offense, to imprisonment for ten years.

Id.
 (emphasis added).
(footnote: 1)  Lee argues this enhancement provision overrides the separate enhancement provision found in N.D.C.C. § 19-03.1-23.1(1)(c)(11).  He contends that because his possession of ninety-five pounds of marijuana does not meet the one-

hundred-pound threshold under N.D.C.C. § 19-03.1-23(1)(b), he should have been charged with a Class B felony.

[¶20] Under our rules of statutory interpretation, “[w]henever a general provision in a statute is in conflict with a special provision in the same or in another statute, the two must be construed, if possible, so that effect may be given to both provisions . . . .”  N.D.C.C. § 1-02-07; 
see also
 
Estate of Hansen
, 458 N.W.2d 264, 273 (N.D. 1990) (“Inconsistent statutes should be construed, if possible, to give effect to both.”).  “Words used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears . . . .” N.D.C.C. § 1-02-02.  Section 19-

03.1-23.1(1)(c)(11), N.D.C.C., requires a charge be enhanced to a Class A felony in cases involving 500 grams or more of marijuana and involving any of the following activities:  manufacture, delivery, or possession with intent to manufacture or deliver, or delivery, distribution, or dispensing of a controlled substance by means of the Internet.  Conversely, N.D.C.C. § 19-03.1-23(1)(b) requires enhancement of the charge to a Class A felony only in cases in which 100 pounds or more of marijuana are delivered.

[¶21] These two provisions are not inconsistent under our rules of statutory interpretation.  There is a redundancy in cases in which one hundred or more pounds of marijuana are actually delivered, but in all other instances, the provisions are functionally distinct.  Under the common usage of the word “delivers,” a physical transfer of the item must occur.  The word “deliver” is defined as an act to “[g]ive, transfer; yield possession or control of[.]”  
Webster’s Third New International Dictionary of the English Language
 597 (1971).  In this case, Lee never transferred or delivered to another party any of the marijuana that was present in his pickup.  It was seized by law enforcement immediately after his arrest.  Accordingly, the enhancement provision for 
delivery
 of marijuana does not apply to this case.

[¶22] The enhancement provision found in N.D.C.C. § 19-03.1-23.1(1)(c)(11) does apply, however.  This statute requires enhancement of the charge when the defendant manufactures, delivers, or possesses with intent to deliver an amount of marijuana equal to five hundred grams or greater.  The ninety-five pounds of marijuana that Lee possessed far exceeded five hundred grams (or less than two pounds), and he has pled guilty to the crime of possession of marijuana with intent to deliver.  Accordingly, the charge is required to be enhanced under N.D.C.C. § 19-03.1-23.1(1)(c)(11).  We affirm the district court’s order denying Lee’s motion to reduce the charge against him.

 

IV

[¶23] The evidence before the district court provided a sufficient basis to conclude the officer had reasonable suspicion of criminal activity to detain Deviley and Lee for further investigation following the initial traffic stop.  Additionally, Lee’s enhanced charge for possession of marijuana with intent to deliver was proper.  We affirm the district court’s denial of Deviley and Lee’s motions and affirm their criminal judgments.

[¶24] Dale V. Sandstrom

Daniel J. Crothers

Mary Muehlen Maring

Gerald W. VandeWalle, C.J.

Kapsner, Justice, dissenting.

[¶25] I respectfully dissent.  I believe the motion to suppress was improperly denied because Deviley and Lee were unlawfully detained after the officer told Lee he was “good to go.”

[¶26] The Fourth Amendment has not been violated if seizure of a person was supported by reasonable and articulable suspicion the seized individual was engaged in criminal activity.  
State v. Franzen
, 2010 ND 244, ¶ 9, 792 N.W.2d 533; 
see also
 
State v. Fields
, 2003 ND 81, ¶ 12, 662 N.W.2d 242.

To determine whether a reasonable suspicion exists, we consider the totality of the circumstances and apply an objective standard, taking into consideration the inferences and deductions an investigating officer would make based on the officer’s training and experience.  “‘The question is whether a reasonable person in the officer’s position would be justified by some objective manifestation to suspect the defendant was, or was about to be, engaged in unlawful activity.’”  “Whether the facts support a reasonable and articulable suspicion is a question of law . . . .”

Franzen
, at ¶ 12 (quotations and citations omitted).

[¶27] However, the phrase “officer’s training and experience” should not be used to mask what was operating in this case—the officer simply had a strong hunch that these individuals, driving a vehicle with an out-of-state license, were engaged in criminal activity.  We have to be mindful not to let “officer’s training and experience” become a substitute for a showing of a true reasonable and articulable suspicion that a person is engaged in criminal activity.

[¶28] In 
Franzen
, we concluded the police officer had reasonable and articulable suspicion Franzen was engaged in criminal activity after the purposes of the initial traffic stop were completed, and Franzen’s Fourth Amendment rights were not violated.  2010 ND 244, ¶ 16, 792 N.W.2d 533.  This Court considered the totality of the circumstances, including the use of air fresheners and a recently-lit cigarette as masking odors, other indicators of drug culture including a displayed knitted mushroom, the passenger’s movements to hide something under his seat, and Franzen’s extreme nervousness indicated by trembling hands, a pounding carotid artery, and unusual increased nervousness throughout the traffic stop.  
Id.
 at ¶¶ 13-16.

[¶29] In 
Fields
, we concluded the police officer did not have reasonable and articulable suspicion Fields was engaged in criminal activity after the purposes of the initial traffic stop were completed, and Fields’ Fourth Amendment rights were violated.  2003 ND 81, ¶ 21, 662 N.W.2d 242.  The police officer cited several factors supporting his contention he had reasonable suspicion Fields was engaged in criminal activity.  
Id.
 at ¶ 14.  The officer’s knowledge of Fields’ criminal history was a legitimate factor to be considered, although knowledge of criminal history alone was insufficient to support reasonable suspicion.  
Id.
 at ¶ 15.  The investigating officer had information from a confidential informant that Fields was continuing to participate in drug activities, but there were no specific facts connecting Fields’ activities to his vehicle or travels on the night he was stopped, and the information was conclusory and had questionable reliability.  
Id.
 at ¶¶ 17-18.  We stated that Fields’ nervous, evasive behavior alone was insufficient to establish a reasonable suspicion of criminal activity, because it is not unusual for a motorist to exhibit nervousness when confronted by a police officer.  
Id.
 at ¶ 19.  The officer also claimed Fields had a suspicious story about driving to buy milk and cereal around 3:00 a.m., but Fields’ explanation described innocent and not uncommon behavior, so the explanation was insufficient to establish reasonable suspicion.  
Id.
 at ¶ 20.  We concluded the combination of factors did not constitute reasonable suspicion, but instead the officer acted on a “mere hunch.”  
Id.
 at ¶ 21.

[¶30] Trooper Rost offered several factors to support his suspicion that Deviley and Lee were trafficking narcotics.  Trooper Rost testified Lee acted nervously and “was breathing hard, had a visible pulse in his neck.”  Trooper Rost said it was hard to explain, but he observed the way Lee was “acting, moving, breathing, the pulse, the way he answered the questions, the shaky voice, all that together led me to believe he was nervous.”  Trooper Rost could not explain why Lee did not appear to have a shaky voice on the recording of the stop, but maintained Lee’s voice had been shaky.  Trooper Rost testified it is common for people to be nervous when stopped for a traffic offense.

[¶31] Trooper Rost testified Deviley and Lee’s statements were a factor to support reasonable and articulable suspicion they were engaged in criminal activity.  Trooper Rost stated it was suspicious that Lee seemed to know little of Deviley’s travel plans prior to joining Lee, and it was suspicious Lee was not certain of where Deviley went to school.  Trooper Rost said Lee’s answers were “inconsistent with what a normal trip would be with two people who are friends.”  Trooper Rost testified Lee and Deviley provided inconsistent travel plans.  Lee said he was going to Minneapolis.  Deviley said his destination was Wisconsin, and Lee was going to drop him off.  Trooper Rost testified he interpreted this to mean Lee was going to drop Deviley off in Wisconsin.

[¶32] Trooper Rost said the presence of a can of energy drink in the vehicle factored into his suspicion that Deviley and Lee were trafficking narcotics and that the presence of an energy drink is something he was trained to look for.  The State had argued Trooper Rost observed the amount of luggage Deviley and Lee had, and the amount of luggage was not consistent with the length of the trip they said they were taking.  However, Trooper Rost did not testify he considered the amount of luggage in forming suspicion of narcotics trafficking.  Essentially, Trooper Rost relied upon Lee’s nervousness during the stop, Lee’s lack of knowledge about Deviley’s education and prior travel plans, Trooper Rost’s understanding Deviley and Lee gave inconsistent travel plans, and the presence of a can of energy drink, to form suspicion Deviley and Lee were trafficking narcotics.

[¶33] The district court’s orders and findings of fact do not support its decision that there existed reasonable and articulable suspicion the defendants were engaged in criminal activity.  The court stated that the only factor from 
Fields
, 2003 ND 81, 662 N.W.2d 242, present in this case was nervousness.  The court noted it was difficult to determine whether Lee displayed any nervousness from the recording of the stop, but relied upon Trooper Rost’s training and experience to make deductions based upon the circumstances.  Courts may consider “the inferences and deductions an investigating officer would make based on the officer’s training and experience.”  
Franzen
, 2010 ND 244, ¶ 12, 792 N.W.2d 533.  Besides the court’s statement that the defendants’ nervousness supported reasonable suspicion, the court did not say whether it found the existence of bases other than nervousness to support reasonable suspicion.  The court completely accepted Trooper Rost’s conclusion reasonable and articulable suspicion existed.  Though courts may consider the inferences and deductions an investigating officer would make, the court must make adequate findings.  Mere reliance on a police officer’s training and experience does not provide the 
articulable
 basis for suspicion required to satisfy the Fourth Amendment.  The findings by the district court do not establish reasonable and articulable suspicion of criminal activity at the time when Lee was told he was “good to go.”

[¶34] Trooper Rost testified Lee was visibly nervous, and it was normal for detained motorists to be nervous during a traffic stop.  In 
Fields
 we stated:

“Nervous, evasive behavior is a pertinent factor in determining reasonable suspicion.”  However, nervousness alone is not enough to establish a reasonable and articulable suspicion because “[i]t certainly cannot be deemed unusual for a motorist to exhibit signs of nervousness when confronted by a law enforcement officer.”

2003 ND 81, ¶ 19, 662 N.W.2d 242 (quotations and citations omitted).  This Court stated, “Nervousness during a traffic stop . . . could ‘describe a very large category of presumably innocent travelers.’”  
Id.
 at ¶ 21 (citing 
United States v. Jones
, 269 F.3d 919, 927 (8th Cir. 2001)).  In 
Franzen
, by contrast, the police officer testified the seized individuals had been extremely nervous, the defendant’s nervousness increased during the stop, and the defendant’s nervous behavior was unusual.  2010 ND 244, ¶ 14, 792 N.W.2d 533.  In the present case, the defendants’ nervousness alone was insufficient to support reasonable and articulable suspicion they were trafficking narcotics.

[¶35] Trooper Rost concluded Deviley and Lee gave inconsistent travel plans, and Lee’s lack of knowledge about Deviley was suspicious.  “Inconsistencies about the details of a trip is a relevant factor in deciding whether reasonable suspicion exists.”  
Franzen
, 2010 ND 244, ¶ 15, 792 N.W.2d 533.  Trooper Rost interpreted Deviley and Lee’s statements on their travel plans to be inconsistent, because he thought Deviley meant Lee was going to drop him off in Wisconsin, but Lee had stated he was only driving to Minnesota.  Deviley testified in court that he meant Lee was going to drop him off in Minnesota, and someone else would take him to Wisconsin.  Deviley also testified that he explained this to Trooper Rost.  The district court did not make any findings on inconsistent travel plans and these apparently conflicting allegations.  The court did not make any findings on Lee’s lack of knowledge about Deviley’s education and prior travel plans either.  However, it may not be unusual for drivers to not know all the details of their passengers’ lives, even if they are considered friends.  Though Trooper Rost believed the defendants’ statements were suspicious, and “unusual or suspicious travel plans may give rise to reasonable suspicion,” 
Fields
, 2003 ND 81, ¶ 20, 662 N.W.2d 242, the defendants’ travel plans and knowledge of the details of each other’s lives in this case do not justify a suspicion they were engaged in criminal activity.  
See
 
United States v. Simpson
, 609 F.3d 1140, 1150-52 (10th Cir. 2010) (by themselves, evasions and inconsistencies regarding destinations and details do not constitute reasonable suspicion; however, added with other factors indicating criminal activity, inconsistencies may indicate a motorist is fabricating a story and support reasonable suspicion); 
United States v. Gill
, 513 F.3d 836, 844-45 (8th Cir. 2008) (defendants had given inconsistent travel plans regarding destination and purpose of trip, and the inconsistencies, in isolation, were not indicative of criminal activity, but taken with other facts in the case, contributed to reasonable suspicion).  The district court in this case did not articulate any findings demonstrating its reliance upon Deviley and Lee’s supposed inconsistent statements as indicating criminal activity.

[¶36] Trooper Rost testified he has been trained to look for, among other items, energy drinks in vehicles, because narcotics traffickers on long cross-country trips may use energy drinks to keep themselves awake.  Though courts take “into consideration the inferences and deductions an investigating officer would make based on the officer’s training and experience,” 
Franzen
, 2010 ND 244, ¶ 12, 792 N.W.2d 533, the presence of a can of energy drink in a vehicle alone does not support a suspicion the defendant was engaged in unlawful activity.  
Cf.
 
id.
 at ¶ 13 (officer suspected air fresheners and recently-lit cigarette were used to mask odor of marijuana, and the presence of those items supported a finding of reasonable suspicion).  Energy drinks are sold in a variety of locations, and it may be common for motorists innocent of any crime to consume energy drinks.

[¶37] Trooper Rost testified Deviley and Lee’s nervousness increased after he summoned the drug-sniffing canine unit.  At this point, Deviley and Lee had already been seized, and behavior after seizure has occurred cannot be relied upon to establish reasonable and articulable suspicion of criminal activity.  
See
 
Franzen
, 2010 ND 244, ¶ 15, 792 N.W.2d 533 (officer did not know of inconsistent details in travel plans until after he issued Franzen a citation and the initial purpose of the stop was completed, so the inconsistent details were not a factor in determining if reasonable suspicion existed).

[¶38] Taken together, the explanation offered by Trooper Rost is that persons traveling together who offer inconsistent and incomplete travel plans when separately questioned, who do not know the details of each others’ lives, who only have luggage that appears sufficient for a week, who have an open energy drink, and who appear nervous when stopped for a traffic violation, are likely to be engaged in criminal activity.  Where the arresting officer knew much more about the criminal background of the detained individual, but was similarly suspicious, we held the officer was acting on a “mere hunch.”  
Fields
, 2003 ND 81, ¶ 21, 662 N.W.2d 242.  Here it turned out that Trooper Rost had a good hunch, but that was all it was—a hunch.

[¶39] I would reverse the order denying suppression of evidence and remand to permit Deviley and Lee to withdraw their guilty pleas.

[¶40] Carol Ronning Kapsner

FOOTNOTES
1:    
The emphasized language was removed from N.D.C.C. § 19-03.1-23(1)(b) in 2011.  
See
 2011 N.D. Sess. Laws ch. 162, § 1.  We consider the previous version of the statute, however, because this case predates the amendment.