2015 ND 281

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Clinton Francis WALKER, Defendant and Appellant.**

**No. 20140441.**

Supreme Court of North Dakota.

Dec. 1, 2015.

Rehearing Denied Dec. 22, 2015.

Julie A. Lawyer, Burleigh County Assistant State's Attorney, Bismarck, ND, for plaintiff and appellee.

Lee M. Grossman, Valley City, ND, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1]   Clinton Walker appealed from a criminal judgment entered upon his conditional plea of guilty for possession of marijuana and tetrahydrocannabinols with intent to deliver.   Walker pled guilty after the district court denied his motion to suppress evidence and, on appeal, challenges that order.   We affirm.

I

[¶ 2]   While conducting drug surveillance, a Bismarck Police officer observed a vehicle with out-of-state plates.   A detective working with the officer believed he recognized at least one occupant of the vehicle.   Walker was a passenger in that vehicle.   The detective asked the officer to pull the vehicle over if he observed it make a traffic violation.   The officer observed the vehicle making an illegal left turn and stopped the vehicle.

[¶ 3]   Upon approaching the vehicle, the officer informed the occupants as to the reason for the stop, asked for their identification, and asked about their travel plans.   They informed the officer they were traveling from Washington State to Indiana because the driver's mother was undergoing surgery.   The officer also discovered that the vehicle was rented by Walker in Indianapolis and would be returned to that location.   When asked, the occupants denied there was anything illegal in the vehicle.

[¶ 4]   The officer relayed the identification and travel plans to the detective, who did not recognize their names.   A check of their information did not turn up any outstanding warrants or criminal history.   The officer radioed a second unit to help secure the scene and had the driver, Tyler Asbach, exit the vehicle.   Asbach was again asked about their travel plans.   He indicated Walker was his second cousin and that his mother was having surgery, but did not know what kind of surgery.   He also stated that they chose to drive to see the country.

[¶ 5]   The officer requested permission to search the vehicle, which Asbach did not

give as he did not rent the vehicle. The officer then spoke to Walker, who indicated he was a third cousin to Asbach and they were returning to Indiana because Asbach's mother was undergoing carpal tunnel surgery. The officer requested permission from Walker to search the vehicle, which he received. The length of the stop from beginning until consent was given was twelve minutes. No citation or warning had yet been issued. The officer did not tell Walker what he was searching for.

[¶ 6] Based on the occupants' travel plans, the officer's knowledge that marijuana was in some way decriminalized in the state of Washington, and that drug traffickers rent vehicles instead of using their own vehicles to transport drugs, the officer suspected the occupants were involved in drug trafficking. A search of the interior of the vehicle did not uncover any criminal activity. During the search, both occupants were standing behind the vehicle. The officer requested that the trunk be opened. No request for consent to search the trunk was made, and no objection to searching the trunk was made. A number of items of luggage were discovered inside the trunk. No request for consent to search the luggage was made, and no objection to a search of the luggage was made by either occupant. A search of the luggage uncovered bags of items with marijuana leaves displayed on them which the officer suspected were edible marijuana products, as well as bags of raw marijuana. The officer did not inquire as to the ownership of each piece of the luggage prior to the search. Both occupants were then placed under arrest.

[¶ 7] Walker and Asbach moved to suppress the evidence and dismissal of the charges arguing the search and seizure of Walker's vehicle were illegal. After the suppression hearing the district court denied the motion, finding the officer was conducting duties related to the initial stop, the stop was reasonable, valid and voluntary consent was given by Walker, and the scope of consent was reasonable in its duration and was not limited to the interior of the vehicle. Walker entered a conditional plea of guilty and this appeal followed.

II

[¶ 8] When reviewing a trial court's ruling on a motion to suppress, this Court will "defer to the court's findings of fact and resolve conflicts in the evidence in favor of affirmance." *State v. Guscette*, 2004 ND 71, ¶ 5, 678 N.W.2d 126. A trial court's disposition of a motion to suppress will be affirmed unless, "after resolving conflicting evidence in favor of affirmance, there is insufficient competent evidence fairly capable of supporting the trial court's findings, or the decision is contrary to the manifest weight of the evidence." *Id.*

[¶ 9] Our state and federal constitutions prohibit unreasonable searches and seizures. U.S. Const. amend. IV; N.D. Const. art. I, § 8; *State v. Odom*, 2006 ND 209, ¶ 9, 722 N.W.2d 370. "Warrantless searches are unreasonable unless they fall within a recognized exception to the warrant requirement." *Odom*, 2006 ND 209, ¶ 9, 722 N.W.2d 370. "Consent is a well-established exception to the warrant requirement." *Id.* "The scope of an individual's consent is determined by 'considering what an objectively reasonable person would have understood the consent to include.'" *Id.* at ¶ 10 (quoting *United States v. Urbina*, 431 F.3d 305, 310 (8th Cir.2005)). "The reasonableness inquiry is applied to the understanding of an officer who is conducting a search." *Id.* "Whether a search exceeds the scope of consent is

a factual question, subject to the clearly erroneous standard of review." *Id.*

## III

[¶ 10] Walker argues his detainment was unreasonable because the purpose of the stop had been completed and further detention was no longer reasonably related in scope to the circumstances which justify the stop. In a pre-trial suppression motion, we determine whether reasonable suspicion exists based on the "totality of the circumstances" and apply an "objective standard, taking into consideration the inferences and deductions an investigating officer would make based on the officer's training and experience." *State v. Franzen*, 2010 ND 244, ¶ 12, 792 N.W.2d 533. "The question is whether a reasonable person in the officer's position would be justified by some objective manifestation to suspect the defendant was, or was about to be, engaged in unlawful activity" and "[w]hether the facts support a reasonable and articulable suspicion is a question of law." *Id.*

[¶ 11] The initial traffic stop of the vehicle was proper because an illegal turn was made. "An officer may detain an individual at the scene of a traffic stop for a reasonable period of time necessary for the officer to complete his duties resulting from the traffic stop." *State v. Deviley*, 2011 ND 182, ¶ 9, 803 N.W.2d 561. The stop may continue "as long as reasonably necessary to conduct [duties resulting from a traffic stop] and to issue a warning or citation." *Id.* Those duties include:

> request[ing] the driver's license and registration, request[ing] that the driver step out of the vehicle, request[ing] that the driver wait in the patrol car, conduct[ing] computer inquiries to determine the validity of the license and registration, conduct[ing] computer searches to investigate the driver's crim-

inal history and to determine if the driver has outstanding warrants, and mak[ing] inquiries as to the motorist's destination and purpose.

*State v. Fields*, 2003 ND 81, ¶ 8, 662 N.W.2d 242 (citing *United States v. Jones*, 269 F.3d 919, 924 (8th Cir.2001)). "The Fourth Amendment of the United States Constitution is violated by the continued seizure of a traffic violator after the purposes of the initial traffic stop are completed, unless the officer has reasonable and articulable suspicion that criminal activity is afoot." *Deviley*, 2011 ND 182, ¶ 9, 803 N.W.2d 561.

[¶ 12] "[A]s long as law enforcement officers do not induce cooperation by coercive means, they may pose questions and ask for consent to search even when they have no basis for suspecting criminal activity." *Guscette*, 2004 ND 71, ¶ 8, 678 N.W.2d 126. In *Guscette*, we upheld the district court's finding that a seizure had not occurred after a driver was given a verbal warning and told she was free to leave, and then was asked for permission to search the vehicle and provided consent to a search. *Id.* at ¶ 9. Here, no citation or warning had yet been given. The activities the officer was conducting were those permissible under the law and the stop occurred in a minimal amount of time. Because no citation or warning had yet been issued and the purpose of the stop was not concluded, there is sufficient competent evidence supporting the district court's finding that Walker was not illegally seized.

## IV

[¶ 13] Walker argues that the circumstances surrounding the stop would not give rise to reasonable suspicion to search the vehicle and the consent provided was not voluntary for both the search of the passenger compartment as well as the

continued search of the trunk because Walker was not free to leave. As we noted above, no reasonable suspicion is required to search a vehicle where voluntary consent is given. The test for determining the validity of a consent to search is whether the consent is voluntary, and a trial court is to make a determination of voluntariness by examining the "totality of the circumstances which surround the giving of a confession or a consent to a search to see whether it is the product of an essentially free choice or the product of coercion." *Guscette*, 2004 ND 71, ¶ 11, 678 N.W.2d 126. Under this standard, "the existence or absence of certain factors concerning (1) the characteristics and condition of the accused at the time [he or she] confessed or consented and (2) the details of the setting in which the consent or confession was obtained are significant in deciding voluntariness, no one factor in and of itself is determinative." *Id.* "[T]o sustain a finding of consent, the State must show affirmative conduct by the person alleged to have consented that is consistent with the giving of consent, rather than merely showing that the person took no affirmative actions to stop the police from entering." *State v. Morin*, 2012 ND 75, ¶ 7, 815 N.W.2d 229.

[¶ 14] Here, the record shows the officer received consent through affirmative conduct. When asked permission to search the vehicle, Walker said "yeah." Neither the condition of the accused, nor the setting in which the consent was obtained indicate any evidence of coercion. The district court did not err in finding that Walker voluntarily consented to a search.

## V

[¶ 15] Walker further argues the officer exceeded the scope of his consent to search the vehicle in opening the trunk and searching the luggage contained therein. "The scope of an individual's consent is determined by 'considering what an objectively reasonable person would have understood the consent to include.'" *State v. Odom*, 2006 ND 209, ¶ 10, 722 N.W.2d 370 (citing *United States v. Urbina*, 431 F.3d 305, 310 (8th Cir.2005)). "The reasonableness inquiry is applied to the understanding of an officer who is conducting a search" and "[w]hether a search exceeds the scope of consent is a factual question, subject to the clearly erroneous standard of review." *Id.* "The scope of a search is generally defined by its expressed object" and "[w]hen determining reasonableness, a court must consider what the parties knew at the time to be the object of the search." *Id.* at ¶ 12. "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). "It is expedient to narrow the scope of such searches and to require additional consent to search constitutionally protected areas that a reasonable person would understand did not fall within the scope of the original consent." *State v. Daniels*, 2014 ND 124, ¶ 19, 848 N.W.2d 670.

[¶ 16] The United States Supreme Court held that where an officer informed the driver of his belief the vehicle contained narcotics, and received general consent to search the vehicle, the search could reasonably extend to any container in that vehicle. *Jimeno*, 500 U.S. at 251–52, 111 S.Ct. 1801. In that case, the police received consent to search the vehicle and opened a closed paper bag found on the floor of the vehicle. *Id.* It distinguished the objectively unreasonable extension of

that search to breaking open a locked briefcase in the trunk. *Id.*

[¶ 17] Here, the context of Walker's communications with the officer touched on whether any illegal items were located in the vehicle. A typical reasonable person would have understood that a search of illegal items would encompass drugs. A search for hidden items would extend to different parts of the vehicle and include unlocked bags in the trunk which may contain the object of that search. *United States v. Alcantar,* 271 F.3d 731, 738 (8th Cir.2001); *United States v. Hammons,* 152 F.3d 1025, 1027–28 (8th Cir.1998). The extension of the vehicle search into the trunk, and the search of the unlocked luggage contained therein did not exceed the scope of the initial consent, and the district court did not err in denying the motion to suppress the evidence.

## VI

[¶ 18] We affirm the district court's order denying the motion to suppress and the judgment of conviction.

[¶ 19] DALE V. SANDSTROM, J., concurs.

LISA FAIR McEVERS, J., concurs in the result.

KAPSNER, Justice, dissenting.

[¶ 20] I respectfully dissent.

[¶ 21] An officer may request consent to search a person's belongings. What an officer may not constitutionally do is unreasonably seize a person for purposes of getting that consent when the officer has no reasonable and articulable suspicion that the person being detained is engaged in criminal activity. As the majority notes in paragraph 10, Walker argues his detainment was unreasonable because the purpose of the stop had been completed and further detention was no longer reasonably

related in scope to the circumstances which justified the stop. For reasons articulated in my dissent in *State v. Asbach,* 2015 ND 280, ¶¶ 24–35, 871 N.W.2d 820, the companion case relating to the driver of the vehicle, I agree.

[¶ 22] During a traffic stop, passengers in the vehicle are seized for purposes of the Fourth Amendment. *Brendlin v. California,* 551 U.S. 249, 263, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007). "[A] traffic stop of a car communicates to a reasonable passenger that he or she is not free to terminate the encounter with the police and move about at will." *Arizona v. Johnson,* 555 U.S. 323, 333, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009). Officers may question passengers on topics unrelated to the purpose for the stop "so long as those inquiries do not measurably extend the duration of the stop." *Id.* Officers may also take certain safety precautions—e.g. ordering a passenger to exit a vehicle and conduct a frisk—but officers may do so only when they "harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Id.* at 327, 129 S.Ct. 781.

[¶ 23] In this case, when the driver refused to give police permission to search the vehicle, there was nothing left to be done relating to the stop other than to issue a traffic citation or warning. Officer Bohn had no reason to believe either Walker or the driver was armed and dangerous. The officer had already run a background check on both Walker and the driver and had not found any warrants for either. He had questioned both men regarding where they had come from, where they were going, how they knew each other, and the purpose for their trip. The officer even consulted with a detective to see whether the detective recognized either the driver or Walker as drug traffickers. By the officer's own admission, quoted in *Asbach,* none of these investigations

and inquiries yielded any information sufficient to give him reasonable suspicion criminal activity was occurring. 2015 ND 280, at ¶ 26, 871 N.W.2d 820 (Kapsner, J., dissenting). Yet the officer persisted, and Walker acquiesced to a search that revealed contraband.

[¶ 24] The trial court found that Officer Bohn asked Walker twice if he could search the vehicle and that "he told Walker that if he could do a quick search of the vehicle they would be able to get on their way." The trial court found that, although Officer Bohn was still in the possession of the mens' driver's licenses, the consent was not conditional because "Officer Bohn was conducting duties related to the initial stop of the vehicle and had not yet finished that process." The only duty relating to the initial stop remaining to be done was to issue a citation or give a warning. Otherwise, the officer was simply extending a seizure to follow his hunch. For *State v. Guscette*, 2004 ND 71, 678 N.W.2d 126, to be applicable to this case, Officer Bohn should have returned the licenses of both men, told them they were free to leave, and then asked for permission to search the car.

[¶ 25] The majority's decision may seem reasonable given the officers' inquiries unrelated to the traffic stop were relatively quick, the time required to search a passenger vehicle is short, and it turned out Walker did, in fact, possess contraband. However, its holding articulates a rule that subjects citizens to constitutional violations merely because those violations can be completed quickly. Both this Court and the United States Supreme Court have stated law enforcement must conclude a seizure when the purpose for the seizure has been completed. *See Rodriguez v. United States*, —— U.S. ——, 135 S.Ct. 1609, 1612, 191 L.Ed.2d 492 (2015); *State v. Deviley*, 2011 ND 182, ¶ 9, 803 N.W.2d 561. Yet, the rule the majority articulates today gives law enforcement the approval to use seizures as leverage for compelling citizens into self-incriminating action by simply prolonging detainment until the citizen acquiesces in the officer's demands: "If I can search your vehicle, I'll let you go." Extending seizures in this manner is contrary to our precedent and in conflict with United States Supreme Court holdings.

[¶ 26] I would reverse the district court's order denying Walker's motion to suppress evidence.

[¶ 27] DANIEL J. CROTHERS, concurs.