2015 ND 280

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Tyler ASBACH, Defendant and Appellant.**

**No. 20140471.**

Supreme Court of North Dakota.

Dec. 1, 2015.

Julie A. Lawyer, Assistant State's Attorney, Bismarck, N.D., for plaintiff and appellee.

Kiara C. Kraus–Parr, Grand Forks, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] Tyler Asbach appeals from a judgment entered after he conditionally pled guilty to a drug-related offense, reserving the right to challenge the denial of his motion to suppress evidence. We conclude: (1) Asbach was not illegally seized while the police officer was conducting duties related to the traffic stop; (2) the district court failed to make specific findings of fact as to whether the police officer acted in bad faith as required under the first part of the inevitable discovery test when searching beyond the scope of the consent to search; and (3) there was sufficient evidence to support a finding that contraband found in Asbach's suitcase would have inevitably been discovered after Asbach's suitcase was searched without his consent, satisfying the second part of the inevitable discovery test. We affirm in part, reverse in part, and remand.

## I

[¶2] On April 30, 2014, Asbach was stopped by Bismarck Police Officer Colt Bohn for making an improper left turn. According to Bohn's testimony at the suppression hearing, he approached the vehicle, spoke with Asbach and a passenger, Clinton Walker, and was told Asbach was from Washington and Walker was from Indiana. Walker told Bohn he rented the vehicle in Indianapolis, drove to Washington to pick up Asbach, and they were returning to Indianapolis to visit Asbach's mother.

[¶3] After briefly speaking with Asbach and Walker, Bohn testified he returned to his vehicle and checked the status of their driver's licenses and checked whether there were any outstanding warrants. Bohn also called for backup to allow him to speak with Asbach and Walker separately to confirm their stories. Asbach told Bohn that Walker, his second cousin, drove to Washington and picked him up, and they were on their way back to Indianapolis to visit Asbach's mother, who was having surgery. Asbach told Bohn he did not know what type of surgery his mother was having, but indicated it was "for something gross." Bohn asked Asbach whether he could search the vehicle, but Asbach stated he could not give consent because Walker rented the vehicle. Bohn testified he then spoke with Walker, who stated he and Asbach, his third cousin, were traveling to Indianapolis to visit Asbach's mother, who was having carpal tunnel surgery. Walker told Bohn he rented the vehicle in Indianapolis on April 25, and it was due to be returned on May 2. Bohn requested to search the vehicle, and Walker consented. Bohn testified approximately twelve minutes elapsed from the time of the stop until the time Walker gave consent to search the vehicle. Bohn stated Asbach had not been given a ticket or warning for the traffic violation before Walker consented to a search of the vehicle.

[¶4] Bohn testified he is a certified drug recognition expert for the Bismarck Police Department and has attended multiple drug recognition and interdiction trainings, including trainings to look for suspicious indicators that may signal something is inside the vehicle that should not be. He testified renting a vehicle in Indianapolis, driving it to Washington to pick somebody up, and driving it back to Indianapolis in a very brief time was suspicious. He also stated the inconsistent stories about what kind of surgery Asbach's mother was having and how Asbach and Walker were related raised his suspicions that a search of the vehicle might reveal drugs.

[¶5] Bohn searched the vehicle while Asbach and Walker stood with the backup officer. After searching the interior of the vehicle, Bohn asked Walker to open the trunk, and Walker complied. The trunk contained several items, including backpacks, three large duffle bags, and a suitcase. Bohn testified he did not ask who owned the items in the trunk before he searched them. One of the first items removed and searched was a suitcase with a tag indicating it belonged to Asbach, and Bohn testified he did not notice the tag until after he had searched the suitcase. Inside the suitcase, Bohn found a large, heat-sealed bag containing numerous items with marijuana leaves on them, which he believed were marijuana edibles. In one of the large unmarked duffle bags, Bohn found a heat-sealed package of marijuana. Asbach and Walker never requested the search be stopped. Asbach and Walker were arrested and taken into custody. According to the affidavit attached to the complaint, Walker claimed ownership of the marijuana found in the duffle bag after his arrest.

[¶ 6] Asbach was charged with possession of marijuana with intent to deliver and possession of tetrahydrocannabinols (edible THC). Asbach moved to suppress the evidence found in the search, arguing he was illegally seized after the purposes of the traffic stop were completed. The district court. denied the motion to suppress, finding Bohn did not take any action outside the duties related to the traffic stop and Asbach was not illegally seized. The court also found the officer's search of Asbach's suitcase without first obtaining his consent was illegal, but under the inevitable discovery doctrine, the contraband discovered in Asbach's suitcase was admissible because the suitcase would have been searched after marijuana was discovered in Walker's bag. Asbach conditionally pled guilty to the charges, reserving the right to appeal the denial of his motion to suppress.

[¶ 7] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. Asbach's appeal is timely under N.D.R.App.P. 4(b). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 29–28–06.

II

[¶ 8] Asbach argues the district court erred in denying his motion to suppress because he was detained longer than necessary for a traffic stop and without reasonable suspicion. Asbach also argues the court erred in concluding the contraband found in his suitcase was admissible under the inevitable discovery doctrine. Asbach is not challenging Bohn's stop of the vehicle.

[¶ 9] This Court has discussed its standard of review of a district court's findings of fact in preliminary proceedings:

A trial court's findings of fact in preliminary proceedings of a criminal case will not be reversed if, after the conflicts in the testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence. We do not conduct a de novo review. We evaluate the evidence presented to see, based on the standard of review, if it supports the findings of fact.

City of Fargo v. Thompson, 520 N.W.2d 578, 581 (N.D.1994) (internal citations omitted).

A

[¶ 10] Asbach argues Bohn completed his duties related to the traffic stop after speaking with Asbach and any investigation after that was an extension of the traffic stop in violation of Asbach's constitutional right against unreasonable seizures under the Fourth Amendment of the United States Constitution and Article 1, § 8, of the North Dakota Constitution.

[¶ 11] "An officer may detain an individual at the scene of a traffic stop for a reasonable period of time necessary for the officer to complete his duties resulting from the traffic stop." State v. Deviley, 2011 ND 182, ¶ 9, 803 N.W.2d 561 (quoting State v. Franzen, 2010 ND 244, ¶ 8, 792 N.W.2d 533). The officer may check the driver's license and registration, ask the driver about his destination and purpose, and request the driver step over to the patrol car. State v. Guscette, 2004 ND 71, ¶ 7, 678 N.W.2d 126. The officer may also ask a passenger similar questions to confirm the information the driver provided. United States v. Brown, 345 F.3d 574, 578 (8th Cir.2003). The investigative detention may continue as long as reasonably necessary to conduct duties relating to a traffic stop and to issue a warning or citation. Deviley, at ¶ 9.

[¶ 12] "The Fourth Amendment of the United States Constitution is violated by the continued seizure of a traffic violator after the purposes of the initial traffic stop are completed...." *Id. See also United States v. Peralez,* 526 F.3d 1115, 1119 (8th Cir.2008) ("A constitutionally permissible traffic stop can become unlawful ... 'if it is prolonged beyond the time reasonably required to complete' its purpose." (quoting *Illinois v. Caballes,* 543 U.S. 405, 407, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005))). On-scene investigation into other crimes detours from the purpose of the stop. *Rodriguez v. United States,* —— U.S. ——, 135 S.Ct. 1609, 1616, 191 L.Ed.2d 492 (2015). If, during the course of completing the duties resulting from a traffic stop, "the officer develops reasonable suspicion that other criminal activity is afoot, the officer may expand the scope of the encounter to address that suspicion." *Peralez,* at 1120; *see also Rodriguez,* at 1615. This Court has applied an objective standard to decide whether reasonable suspicion exists:

> To determine whether a reasonable suspicion exists, we consider the totality of the circumstances and apply an objective standard, taking into consideration the inferences and deductions an investigating officer would make based on the officer's training and experience. The question is whether a reasonable person in the officer's position would be justified by some objective manifestation to suspect the defendant was, or was about to be, engaged in unlawful activity. Whether the facts support a reasonable and articulable suspicion is a question of law.

*Deviley,* 2011 ND 182, ¶ 8, 803 N.W.2d 561 (quoting *Franzen,* 2010 ND 244, ¶ 12, 792 N.W.2d 533 (quotation marks and citations omitted)).

[¶ 13] Here the district court found:

Officer Bohn did not take any action outside the duties resulting from a valid traffic stop. Officer Bohn approached the vehicle asked for identification and vehicle information from [Asbach and Walker]. He inquired about their destination, the purpose of their trip, and verified their information. He asked Asbach to step out of the vehicle, inquired about their trip and asked for consent to search the vehicle. After being told Asbach could not consent to a search, Officer Bohn approached Walker and inquired about the destination and purpose of the trip before asking Walker for consent to search the vehicle. Walker granted consent. At the time Walker gave Officer Bohn consent to search the vehicle only twelve minutes had passed since the vehicle was stopped. This is not an unreasonable amount of time for an officer conducting a traffic stop to spend verifying the passenger and vehicle information, inquiring about the destination and purpose for the trip, and asking for consent to search the vehicle. Additionally, "[w]hen a motorist gives consent to search his vehicle, he necessarily consents to an extension of the traffic stop while the search is conducted." *[State v.] Mertz,* 362 N.W.2d [410,] 412 [ (N.D.1985) ]. As a result, Officer Bohn's actions conformed with the appropriate steps to be taken during a traffic stop and because Walker consented to a search, the duration of the stop was lawfully extended. As a result, Asbach was not illegally seized.

[¶ 14] The length of the traffic stop was related to Bohn's performance of his duties related to the stop. He checked Asbach's and Walker's driver's licenses, checked for outstanding warrants, and spoke with each of them about their trip. Bohn testified approximately twelve minutes elapsed from the time of the stop to

the time he was given consent to search the vehicle. In addition, Asbach was not issued a warning or citation before consent was given to search the vehicle. We conclude there is sufficient competent evidence supporting the district court's finding that Bohn was conducting his duties related to the traffic stop and Asbach was not illegally seized.

B

[¶ 15] Asbach argues the district court erred in concluding evidence found when his suitcase was searched beyond the scope of consent was admissible under the inevitable discovery doctrine.

[¶ 16] In *State v. Phelps,* 297 N.W.2d 769, 775 (N.D.1980), this Court adopted a two-part test to determine whether the State may rely on the inevitable discovery exception to the exclusionary rule:

First, use of the doctrine is permitted only when the police have not acted in bad faith to accelerate the discovery of the evidence in question. Second, the State must prove that the evidence would have been found without the unlawful activity and must show how the discovery of the evidence would have occurred.

As to the second part of the test, the United States Supreme Court has held evidence obtained because of unlawful police conduct may be admissible if the State proves by a preponderance of the evidence that the challenged evidence would have otherwise been discovered by lawful means in the course of the investigation. *State v. Olson,* 1998 ND 41, ¶ 16, 575 N.W.2d 649; *Nix v. Williams,* 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).

[¶ 17] The district court found Walker's consent to search the vehicle and trunk did not extend to Asbach's suitcase, in which edible THC was found. Although the court found Bohn's search of Asbach's

suitcase was illegal, it concluded the evidence discovered in the suitcase was admissible under the inevitable discovery doctrine:

In the present case, had Officer Bohn set aside Asbach's luggage before conducting a search, he would have searched Walker's bags pursuant to valid consent, located contraband and would have gained probable cause to search the remainder of the vehicle under the automobile exception. As a result, the inevitable discovery rule applies and the evidence seized will not be suppressed.

■ [¶ 18] The district court's analysis on inevitable discovery addresses only the second part of the test, and therefore we will discuss the second part of the inevitable discovery test first. The second part of the test requires the State to prove, by a preponderance of the evidence, the challenged evidence would have been found without the unlawful activity and to show how the discovery of the evidence would have occurred. *Olson,* 1998 ND 41, ¶ 16, 575 N.W.2d 649; *Phelps,* 297 N.W.2d at 775.

[¶ 19] Asbach told Bohn he could not consent to a vehicle search because Walker rented the vehicle. Walker consented to a vehicle search and opened the trunk when Bohn asked him to. Several items were in the trunk, and one of the items, a suitcase, had a tag identifying it as Asbach's. After finding marijuana edibles in the suitcase, Bohn searched a large duffle bag and found marijuana inside. Bohn testified he did not ascertain ownership of the items in the trunk before he searched them. Neither Walker nor Asbach limited the scope of the search or claimed ownership of any of the items in the trunk before or during the search.

[¶ 20] Asbach is not challenging the validity of Walker's consent or his authority to consent to the vehicle search. Asbach argues there is no evidence to support a finding that Walker owned the duffle bag containing marijuana. Asbach argues Bohn should have ascertained ownership of the items in the trunk before searching them, because it was possible none of Walker's items in the trunk contained anything illegal. Asbach and Walker were the only occupants of the vehicle, Asbach did not claim ownership of the bag during or after the search, and the affidavit attached to the complaint stated Walker claimed ownership of the marijuana found in the duffle bag when he was interviewed after his arrest. We conclude there was sufficient evidence in the record to support a finding the duffle bag containing marijuana was Walker's. Had Bohn searched only Walker's bag under valid consent and discovered marijuana, there would have been probable cause to search Asbach's suitcase under the automobile exception. *See Olson*, 1998 ND 41, ¶ 17, 575 N.W.2d 649; *see also State v. Reis*, 2014 ND 30, ¶ 18, 842 N.W.2d 845 (holding officers may search the vehicle and any containers in the vehicle that may contain the object of the search under the automobile exception). We conclude the court's finding that the State satisfied the second part of the inevitable discovery test was not clearly erroneous.

[¶ 21] The inevitable discovery test also requires the State to prove the police have not acted in bad faith to accelerate the discovery of the challenged evidence. *Phelps*, 297 N.W.2d at 775. The district court, however, did not make any factual findings about whether Bohn acted in bad faith when he searched Asbach's suitcase without consent. Absent any findings on bad faith, we are unable to properly review whether the State satis-fied the first part of the inevitable discovery test. We reverse and remand to allow the district court to make specific findings of fact on the issue of whether Bohn acted in bad faith when he searched Asbach's suitcase without consent.

### III

[¶ 22] The district court judgment and order denying Asbach's motion to suppress is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

[¶ 23] GERALD W. VANDE WALLE, C.J., concurs.

LISA FAIR McEVERS, J., concurs in the result.

KAPSNER, Justice, dissenting.

[¶ 24] I respectfully dissent.

[¶ 25] Officer Bohn seized Asbach for the purpose of issuing a traffic citation for an improper turn. He then extended his seizure of Asbach to investigate whether the vehicle contained contraband, although he had no articulable basis to suspect that it did. Because I believe Officer Bohn's extension of the seizure was in violation of the Fourth Amendment to the United States Constitution, I would reverse the district court's order denying Asbach's motion to suppress evidence.

[¶ 26] Law enforcement officers may only extend traffic stops past the point necessary to complete the purpose of the initial stop when they have reasonable and articulable suspicion that criminal activity is afoot. *State v. Deviley*, 2011 ND 182, ¶ 9, 803 N.W.2d 561 (citing *State v. Franzen*, 2010 ND 244, ¶ 9, 792 N.W.2d 533). Absent reasonable and articulable suspicion, "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures."

*Rodriguez v. United States,* —— U.S. ——, 135 S.Ct. 1609, 1612, 191 L.Ed.2d 492 (2015). *See also Deviley,* at ¶ 9; *Franzen,* at ¶ 9. The majority discusses reasonable and articulable suspicion and implies it was present in this case. *See* majority opinion at ¶ 12. However, the district court never held the officers' criminal investigation was supported by reasonable and articulable suspicion. Officer Bohn's testimony is clear that he had no articulable suspicion at the time he asked for and failed to receive Asbach's consent to search the vehicle; both Asbach and the passenger's driver's licenses were current, and there were no warrants for their arrests. He had checked with the officer who suggested the vehicle be stopped and determined that the driver and passenger were not the people the suggesting officer thought they would be. Even after separating the two occupants to question the passenger, Officer Bohn did not articulate any basis for his suspicion:

> Q. Okay. So having that knowledge at that time, after you get this story from Mr. Walker, in your mind what criminal activity do you believe that they are committing based on those stories? .
>
> A. That I don't know up to that point, and that's why I' did ask for consent to search the vehicle.
>
> Q. Okay. But at that point you had no evidence of anything criminal taking place?
>
> A. No evidence at that point, no.
>
> . . . .
>
> Q. Okay. So when you say you didn't have any evidence of anything criminal taking place—and you indicated very shortly after that that you asked for consent to search the vehicle; correct?
>
> A. Correct.
>
> Q. What were you searching for?

> A. It could be a lot of things. It could be anything from contraband to a dead body, I guess. You really don't know.

Officer Bohn had a good hunch, but that is all it was. The majority glosses over the real issue: whether a law enforcement officer, without reasonable and articulable suspicion, may extend a traffic stop to investigate a crime different from the reason for the stop.

[¶ 27] Our prior cases have addressed this question. Without reasonable and articulable suspicion, law enforcement may conduct criminal investigations that are independent of the purpose for the initial stop, after the stop has been completed and the seizure has ended, if the officer gets consent. In *State v. Guscette,* an officer conducted a routine traffic stop, issued a warning for a broken taillight, and informed the driver she was free to leave. 2004 ND 71, ¶ 2, 678 N.W.2d 126. The officer then asked for permission to search the vehicle, and the driver consented. *Id.* While conducting the search, the officer found contraband. *Id.* We held the search was not unreasonable because, when the officer asked for consent to search, the seizure had already ended and the driver was free to leave. *Id.* at ¶ 10. On the other hand, in *State v. Fields,* an officer conducted a routine traffic stop, issued a citation, walked away from the vehicle, and then returned and asked for consent to search. 2003 ND 81, ¶ 4, 662 N.W.2d 242. The driver refused to consent. *Id.* The officer then ordered the driver to exit the vehicle and called for a drug detection dog. *Id.* We concluded the extension of the seizure "past the point necessary to complete the initial traffic stop violated his Fourth Amendment right to be free from unreasonable seizure." *Id.* at ¶ 21. Like *Fields,* Asbach declined to give consent to search and that should have ended the seizure.

[¶ 28] The United States Supreme Court has recently decided a case that is in accord with our precedent. In *Rodriguez,* the Court was faced with the question of whether police may extend a traffic stop, without reasonable suspicion, in order to conduct a dog sniff. *Rodriguez,* 135 S.Ct. at 1614. An officer pulled Rodriguez over after he committed a traffic violation. *Id.* at 1613. The officer issued a written warning and returned Rodriguez's driver's license. *Id.* The officer then asked permission to search Rodriguez's vehicle. *Id.* Rodriguez refused to give permission; the officer ordered him to stand in front of the patrol car while a K–9 unit was dispatched. *Id.* Seven or eight minutes after the officer issued the warning, a K–9 unit indicated there were drugs in the vehicle. *Id.* The officer searched the vehicle and found methamphetamine. *Id.* The trial court found the extension of the stop was not supported by reasonable suspicion, but the seven to eight minutes it took for the officer to conduct the dog sniff was de minimis and not unreasonable. *Id.* at 1613–14. The Eighth Circuit Court of Appeals affirmed, but it did not review the trial court's finding that the extension of the stop was not supported by reasonable suspicion. *Id.* at 1616–17. The Supreme Court rejected the de minimis rule and remanded for the Eighth Circuit to determine whether reasonable suspicion justified the extension of the traffic stop. *Id.*

[¶ 29] The Court concluded the nature of the extension, rather than its duration, is the critical question. *Rodriguez,* at 1616. The Court explained: "An officer . . . may conduct certain unrelated checks during an otherwise lawful traffic stop. But . . . he may not do so in a way that prolongs the stop." *Id.* at 1615. "The critical question, then, is . . . whether conducting the sniff prolongs—*i.e.,* adds time to—the stop." *Id.* at 1616. In other words, prolonging a stop for an impermis-

sible reason—whether seven minutes or twelve—constitutes an unreasonable extension. Consequently, the relevant inquiry, as the Court has laid out in *Rodriguez,* must focus on the purpose underlying the conduct that extends the stop.

[¶ 30] Courts have attempted to distinguish conduct resulting from a particular stop versus conduct unrelated to the stop. This Court has stated "[a] reasonable period of detention includes the amount of time necessary for the officer to complete his duties resulting from the traffic stop." *State v. Mertz,* 362 N.W.2d 410, 412 (N.D. 1985). Those duties may include:

> request[ing] the driver's license and registration, request[ing] that the driver step out of the vehicle, request[ing] that the driver wait in the patrol car, conduct[ing] computer inquiries to determine the validity of the license and registration, conduct[ing] computer searches to investigate the driver's criminal history and to determine if the driver has outstanding warrants, and mak[ing] inquiries as to the motorist's destination and purpose.

*Fields,* 2003 ND 81, ¶ 8, 662 N.W.2d 242 (quoting *United States v. Jones,* 269 F.3d 919, 924 (8th Cir.2001)). Likewise, the United States Supreme Court has explained some purposes are permissible, while others are not:

> Beyond determining whether to issue a traffic ticket, an officer's mission includes "ordinary inquiries incident to [the traffic] stop." Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly.

. . . .

Unlike a general interest in criminal enforcement, however, the government's officer safety interest stems from the mission of the stop itself. Traffic stops are "especially fraught with danger to police officers," so an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely.... On-scene investigation into other crimes, however, detours from that mission.

*Rodriguez*, 135 S.Ct. at 1615–16 (alteration in original) (citations omitted). Therefore, as the Court explained in *Rodriguez*, officers may extend traffic stops for certain permissible purposes: (1) activities based on the reason for the stop, including the issuance of a traffic ticket, citation, or warning; (2) activities performed to ensure vehicles on the road are operated safely; and (3) activities performed to ensure officer safety. As the Court noted in *Rodriguez*, "[h]ighway and officer safety are interests different in kind from the Government's endeavor to detect crime in general or drug trafficking in particular." *Id.* at 1616.

[¶ 31] The purpose underlying the extension of the seizure in this case—to investigate a hunch the vehicle contained contraband—does not fall within any of the permissible purposes. Officer Bohn pulled Asbach over because he observed Asbach commit an illegal turn. He then questioned Asbach and his passenger about their travel plans. After hearing their plans, he developed a hunch they might be engaged in drug trafficking. He then extended the stop in order to conduct an investigation into whether the vehicle contained contraband. His reason for prolonging the stop, in his own words, was no longer to issue a traffic citation:

Q. Okay. So at this point would you agree the stop is no longer for the purpose of the traffic stop; correct?

A. I believe it's still to determine whether or not there's any criminal activity taking place in the vehicle.

Q. Okay. But the purpose isn't to write a citation at that point any more? You want to do further investigation regarding criminal activity; correct?

A. Very brief investigation, yes.

[¶ 32] Although the district court found the stop was not unreasonably prolonged, the length of time is not the issue.

If an officer can complete traffic-based inquiries expeditiously, then that is the amount of "time reasonably required to complete [the stop's] mission." As we said in *Caballes* and reiterate today, a traffic stop "prolonged beyond" that point is "unlawful." The critical question, then, is not whether the dog sniff occurs before or after the officer issues a ticket ... but whether conducting the sniff "prolongs"—*i.e.*, adds time to—"the stop,"....

*Rodriguez*, 135 S.Ct. at 1616 (citation omitted). At the point where Asbach denied permission to search the vehicle, there was nothing to be done relating to the traffic stop other than issuing a citation or ticket, and there was no articulable suspicion of any other criminal activity occurring. The seizure was, therefore, impermissibly extended. Evidence obtained during a seizure that violates Asbach's Fourth Amendment rights must be suppressed as inadmissible under the exclusionary rule. *State v. Pogue*, 2015 ND 211, ¶ 9, 868 N.W.2d 522.

[¶ 33] The United States Supreme Court has clearly decided that "the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's mission—to address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez*, 135 S.Ct. at 1614 (citation omitted). The officers' subsequent conduct in this

case was·unrelated to either of these purposes. I would follow the United States Supreme Court's holding in *Rodriguez* and "hold that a police stop exceeding the time needed ·to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Id.* at 1612. The majority's conclusion—that the "length of the traffic stop was related to Bohn's performance of his duties related to the stop"—is inaccurate. And its characterization of the officers' search of Asbach's vehicle and luggage as being related to the issuance of a citation for an improper turn is misleading. The majority's holding sets forth a rule that defies our and United States Supreme Court precedent and allows law enforcement to infringe upon individuals' constitutional rights so long as they do so with haste.

[¶ 34] I would reverse the district court's order denying Asbach's motion to suppress evidence.

[¶ 35] ·DANIEL J. CROTHERS, J., concurs.