2015 ND 146

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Heather Athena Ipsico LEAVITT, Defendant and Appellant.**

**No. 20140404.**

Supreme Court of North Dakota.

June 11, 2015.

Kelly A. Dillon, Assistant State's Attorney, Minot, ND, for plaintiff and appellee.

Scott O. Diamond, Fargo, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Heather Leavitt appeals from a criminal judgment entered after a jury found her guilty of attempted murder. We affirm the criminal judgment.

I

[¶ 2] On February 1, 2014, Timothy Leavitt woke up to being stabbed by an assailant in his home in Minot; he sustained serious injuries during the ensuing struggle, but was ultimately able to flee to safety. Although he was unable to positively identify his attacker, he described the assailant to authorities as "having a pony-tail, the same stature as his wife [Heather Leavitt]." He described the knife used in the attack as having a black handle with metal dots and a long silver blade and noted it was identical to a set of knives he and his wife owned, which were no longer in his home, but were in his wife's possession. He also informed officers he lived in the house alone, he and his wife were separated, and they were sharing custody of their children. Officers observed evidence of an attack at the home and "bloody footprints (stocking feet)" throughout the home and adjacent yards. A black stocking hat with darker blonde hair was found under the bed and a pony-tail band was also found in his home.

[¶ 3] Based on the authorities' investigation, Sergeant David Goodman applied for a search warrant to search Heather Leavitt's person, home, and vehicle, and Goodman provided an affidavit in support of his application. A search warrant was issued, officers executed the warrant, and evidence was collected. During the search of Heather Leavitt's home, officers seized her cell phone. Officers later applied for and received a warrant to search the phone's contents. Heather Leavitt was charged with attempted murder, and before trial, she moved to suppress evidence obtained from the two search warrants. At the hearing on the motion, the State conceded that any evidence obtained from Heather Leavitt's cell phone should be suppressed. The district court granted Heather Leavitt's motion to suppress as to the search of her cell phone, but denied it as to the search of her person, home, and vehicle. A jury ultimately convicted Heather Leavitt of attempted murder.

II

[¶ 4] On appeal, Heather Leavitt argues the district court erred by failing to suppress evidence obtained through a search warrant lacking probable cause and lacking a nexus to support a search of her vehicle and home. She also argues the district court erred by admitting a photograph into evidence, which she alleged had been improperly altered by the State and lacked proper foundation and authentication.

[¶ 5] This Court will affirm a district court's decision on a motion to suppress if there is "sufficient competent evidence fairly capable of supporting the trial court's findings," and it is not contrary to the manifest weight of the evidence. *State v. Doohen*, 2006 ND 239, ¶ 8, 724 N.W.2d 158 (citation omitted). "Questions of law are fully reviewable on appeal, and whether a finding of fact meets a legal standard is a question of law." *Id.* (citation omitted). "Whether probable cause exists to issue a search warrant is a question of law." *State v. Roth*, 2004 ND 23, ¶ 5, 674 N.W.2d 495. This Court generally defers to a magistrate's probable cause determination if there is a substantial basis for the conclusion. *Id.* at ¶ 6.

### III

[¶ 6] Before a search warrant may be issued, the Fourth Amendment to the United States Constitution and Article 1, Section 8, of our state's constitution require probable cause to be established. *State v. Duchene*, 2001 ND 66, ¶ 11, 624 N.W.2d 668. "Probable cause exists when the facts and circumstances relied upon by the judge who issues the warrant would lead a person of reasonable caution to believe the contraband or evidence sought probably will be found in the place to be searched." *State v. Schmalz*, 2008 ND 27, ¶ 11, 744 N.W.2d 734. In order to establish probable cause, a nexus between the place to be searched and the evidence sought must be found, and circumstantial evidence may be used to establish such a nexus. *State v. Ebel*, 2006 ND 212, ¶ 13, 723 N.W.2d 375. "The Fourth Amendment does not require an unbroken trail of evidence." *State v. Damron*, 1998 ND 71, ¶ 24, 575 N.W.2d 912 (citation omitted). While each piece of information, on its own, may be insufficient to establish probable cause and some information may have an innocent explanation, "probable cause is the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observed as trained officers." *State v. Guthmiller*, 2002 ND 116, ¶ 10, 646 N.W.2d 724 (citation omitted). Probable cause to search does not require the same standard of proof that is used to establish guilt at trial. *Duchene*, at ¶ 13. This Court resolves "doubt about the sufficiency of an affidavit in support of a request for a search warrant in favor of sustaining the search." *State v. Thieling*, 2000 ND 106, ¶ 8, 611 N.W.2d 861.

[¶ 7] On appeal, this Court reviews the sufficiency of the information that was before the magistrate, independent of the trial court's decision, and employs the totality-of-the-circumstances test. *Roth*, 2004 ND 23, ¶ 5, 674 N.W.2d 495. In making an independent decision of whether or not probable cause exists, a reviewing court "may not look beyond the four corners of the affidavit" for the issuance of the search warrant. *State v. Lunde*, 2008 ND 142, ¶ 12, 752 N.W.2d 630 (citation omitted).

[¶ 8] The affidavit noted: 1) Timothy Leavitt told law enforcement he woke up to someone attacking him with a knife in his home in Minot, 2) he could not specifically identify the attacker as his wife, except to say the assailant had a pony-tail and was "the same stature as his wife," 3) he and his wife were in the process of getting a divorce and were sharing custody of their children, 4) Timothy Leavitt described the knife as having a black handle with metal dots and a long silver blade, the knife was "identical" to a set of knives he and his wife had owned, and the knife set was no longer in the marital home, but in his wife's possession, 5) his wife still had an ownership interest in the marital home, where the attack took place, but he lived alone and no one should have been in his home, 6) "bloody footprints (stocking feet)" were found at his home and throughout adjacent yards, 7) a black stocking hat, darker blonde hair, and a pony-tail band were found at his home, and 8) a description of Heather Leavitt's vehicle and her residential address at the Minot Air Force Base.

[¶ 9] Heather Leavitt argues the affidavit only contains three statements actually relating to her, namely that she and Timothy Leavitt were "in the process of getting a divorce," that Timothy Leavitt described his attacker as being "the same stature as his wife," and the knife used "was identical to a set of knives he and his wife had, which were no longer in the marital residence, but rather in this wife's

possession." Heather Leavitt maintains her marital status is immaterial, the affidavit was inaccurate because neither had filed for divorce, and the affidavit did not indicate there was any unusual animosity between her and Timothy Leavitt. Heather Leavitt also stresses "stature" only refers to a person's height, not their build or body type. She argues the described knife is a very common model, and the affidavit failed to provide a temporal link between herself and the ownership of such a knife. Heather Leavitt contends the only two facts tying her to the attacker are the description of the attacker's height and the use of a common knife of the same type that was in her possession at some unknown point in time, and these facts are insufficient to rise to the level of probable cause. She also argues the affidavit lacked the necessary information to provide a nexus to search her vehicle and her home.

[¶ 10] The State argues the affidavit established probable cause that the attacker tracked blood out of the home and through the neighborhood and resembled Heather Leavitt. In addition, the State argues there was probable cause that Heather Leavitt's person may contain evidence of the attack, including footprints and DNA for comparison purposes. The State also contends the affidavit established probable cause that the attacker used a weapon "identical to one in the defendant's possession at her home some 15 miles away," and "[i]t is logical for the magistrate to conclude from the affidavit that the defendant's only vehicle may contain evidence of this crime." The State argues, "giving due weight to the deference accorded a magistrate's finding, the affidavit establishes probable cause for the issuance of the search warrant for [Heather] Leavitt's person, residence and vehicle."

[¶ 11] The affidavit notes Timothy Leavitt described the attacker as being "the same stature as his wife," he and his wife were "in the process of getting a divorce," "bloody footprints (stocking feet)" were found at the scene, and the knife used in the attack was "identical" to a set of knives that were in Heather Leavitt's possession. However, the affidavit contains no mention of Heather Leavitt's hair color or length to link her to the description of the attacker's pony-tail or the darker blonde hair and pony-tail band found at the scene. We acknowledge the facts alleged in the affidavit supporting this search warrant constitute a marginal case; however, in light of all the evidence presented to the magistrate, we conclude there was a fair probability that evidence would be found on Heather Leavitt's person, in her vehicle, or in her home. *See Thieling,* 2000 ND 106, ¶ 8, 611 N.W.2d 861 (noting this Court resolves "doubt about the sufficiency of an affidavit in support of a request for a search warrant in favor of sustaining the search"); *see also Schmalz,* 2008 ND 27, ¶ 21, 744 N.W.2d 734 ("[D]oubtful or marginal cases should be resolved in favor of the magistrate's determination.") (citation omitted).

[¶ 12] Combining the time of year, the distance between Minot and the Minot Air Force Base, and the "bloody footprints (stocking feet)" found at the scene, we conclude there was a sufficient nexus to search Heather Leavitt's vehicle. It is a reasonable inference that the assailant did not intend to leave the area on foot in stocking feet in the winter. The affidavit indicates the crime scene had "bloody footprints (stocking feet)," making clothing evidence pertinent to the investigation. *See Damron,* 1998 ND 71, ¶ 23, 575 N.W.2d 912 ("When the object of the search is clothing worn at the time of the crime, the inference that the items are at the offender's residence may be compelling."). Two

sources mentioned in the affidavit provide a nexus to Heather Leavitt's home—the knives in her possession matching those used by the assailant and the clothing worn at the time of the attack. Under the totality of the circumstances, we conclude the magistrate had sufficient probable cause to issue a search warrant for Heather Leavitt's person, home, and vehicle.

## IV

[¶ 13] Heather Leavitt argues the district court erred by allowing Exhibit 15, a photograph, into evidence, which she alleges had been improperly altered and lacked proper foundation and authentication. This Court reviews a district court's evidentiary ruling under the abuse of discretion standard of review. *State v. Streeper*, 2007 ND 25, ¶ 11, 727 N.W.2d 759. "A trial court abuses its discretion in evidentiary rulings when it acts arbitrarily, capriciously, or unreasonably or if it misinterprets or misapplies the law." *Id.* (citation omitted).

[¶ 14] Here, the State offered Exhibit 14, a photograph of a bloody footprint taken from inside Timothy Leavitt's home, into evidence, and the exhibit was admitted without objection from the defense. The State then offered Exhibit 15, which was testified as being the "same photo [as Exhibit 14] cropped and resized to true size." The defense objected to the admission of Exhibit 15, arguing it was "[p]hoto-cropping of evidence." The district court ultimately admitted Exhibit 15 into evidence over the defense's objection.

[¶ 15] "Photographs are generally admissible to establish or clarify evidence of physical facts and to aid the jury in arriving at an understanding of the evidence." *State v. Engel*, 289 N.W.2d 204, 209 (N.D.1980). To be admitted into evidence, a photograph must not give a wrong impression or create undue preju-

dice. *Id.* The admission and use of photographs in criminal trials is largely within the trial court's discretion. *Streeper*, 2007 ND 25, ¶ 13, 727 N.W.2d 759.

[¶ 16] In order to satisfy the requirement of authenticating or identifying evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is," and one of the ways this may be accomplished is by introducing testimony of a witness with knowledge "that an item is what it is claimed to be." N.D.R.Ev. 901. "If the court decides evidence is what its proponent claims it to be, the court may admit the evidence and the question of its weight is for the trier-of-fact." *State v. Thompson*, 2010 ND 10, ¶ 23, 777 N.W.2d 617.

[¶ 17] Here, Allison Elder, an administrative clerk for the investigations division at the Minot Police Department, testified she "took a photo and changed the coloring on it to make it easier to see, and cropped it down and resized it to actual size." Elder testified she "took the photo and referenced the ruler in the photo with the ruler in the computer program, which is what the actual ruler size would be, so that way we could print it actual size." Elder also testified the proportions of the image were locked in by a computer function, she is trained in the operation of the computer program, and the photograph was cropped for the purpose of comparing it to a rolled footprint from Heather Leavitt.

[¶ 18] In determining whether to admit Exhibit 15 into evidence, the district court noted:

In terms of listening to the argument and having reviewed it, also I took into account I have here in terms of a ruler which has centimeters and I measured it out. And counsel can certainly look at that. But I am going to receive it. I

will overrule the objection that was made by [Heather Leavitt], and that, from the standpoint it can go in. . . . And I am taking into account the indications made by the witness [Elder], in terms of the process that she went through, the programs that she utilized. I recognize this is the first time that she has testified as to one of her work products. But in terms of the ability to blow up part of a picture, it can be done, no doubt, and it can be done proportionately. It can also be distorted. By distorted I mean you can be able to blow up just the width in a disproportionate manner as to the height. And that can make things obviously distort items. The ruler with the measurement to be able to put that against it certainly takes that concern aside. And one can be able to compare the two, [Exhibits] 14 and 15. So from that standpoint, I am allowing it.

[¶ 19] Heather Leavitt argues Exhibit 15 lacked proper foundation because Elder did not observe the scene, and the photograph was not a true and accurate representation of the footprint as it had been significantly altered. Heather Leavitt also argues it lacked proper authentication because Elder never testified the process she used provided an accurate result, and there was insufficient testimony that Elder had the necessary training and expertise with the computer program to ensure the manipulation of the photograph would produce an accurate result. In addition, Heather Leavitt maintains admitting Exhibit 15 into evidence was prejudicial because changing the color of the photograph made the blood more pronounced and seemed to change the footprint's size; therefore, it improperly influenced the jury.

[¶ 20] The State argues Elder provided sufficient testimony to show her familiarity with the computer program and to prove Exhibit 15 is what she claimed it was. The State emphasizes the original photograph was also offered and received so that the fact finder could compare the two.

[¶ 21] Here, the original photograph, Exhibit 14, was entered into evidence without objection, and a ruler to provide a reference to the size of the footprint was in both photographs. In addition, Elder testified she had received training in the particular computer program she used, and she testified regarding the process she used to alter the image. Because the admission of photographs in criminal trials is largely within the trial court's discretion, we conclude the trial court did not abuse its discretion in admitting Exhibit 15.

[¶ 22] Other issues raised by Heather Leavitt do not need to be addressed because they are unnecessary for resolving this appeal. *Martin v. Berg*, 2005 ND 108, ¶ 15, 697 N.W.2d 723 ("We need not address questions, the answers to which are unnecessary for the determination of an appeal.").

V

[¶ 23] We conclude the magistrate had sufficient probable cause to issue a search warrant for Heather Leavitt's person, home, and vehicle, and the district court did not abuse its discretion in admitting Exhibit 15. We affirm the criminal judgment.

[¶ 24] GERALD W. VANDE WALLE, C.J., and LISA FAIR McEVERS, J., concur.

CROTHERS, Justice, concurring specially.

[¶ 25] I agree we affirm. I respectfully disagree with the majority that probable cause supported issuance of the first search warrant, making the evidence

seized fruit of the poisonous tree unless otherwise saved. Here, the fruit of the first search is saved by the good faith exception. As noted by the majority, the State conceded suppression of the contents of Heather Leavitt's cell phone obtained under a subsequent warrant; thus that matter is not before us. Majority opinion at ¶ 3.

I

[¶ 26] Our guiding law on the need for probable cause is settled, as described in the majority opinion at ¶ 6. Equally important, however, is that "the information provided in the affidavit [supporting application for the search warrant] must be sufficient to establish probable cause to believe contraband will be found in the place to be searched. Mere suspicion that criminal activity is taking place which may warrant further investigation does not rise to a level of probable cause to search." *State v. Nelson*, 2005 ND 59, ¶ 19, 693 N.W.2d 910 (citation omitted).

[¶ 27] Here, the only useful evidence in the affidavit was that the attacker had "the same stature" as the victim's wife and the assailant used a knife identical to that last seen in the possession of the victim's wife. Majority opinion at ¶ 8. Arguably relevant as a layer in the "laminated total" for consideration of probable cause was that the victim and his wife were in the process of divorce. However, that suggests the untenable proposition that probable cause exists to search the homes of all estranged couples owning cutlery.

[¶ 28] Heather Leavitt argues " '[s]tature' means height. *See, e.g., Merriam–Webster Online Dictionary*, http://www. merriam-webster.com (last visited Feb. 12, 2015)." Another source states, "[s]tature" means the "natural height (as of a person) in an upright position." *Merriam–Webster's Collegiate Dictionary* 1220 (11th

ed.2005). Other sources include "size" or "degree of development attained." *Webster's New World Dictionary* 1392 (2nd College ed.1980) (stature defined as "height or size of body"); *The Random House Dictionary of the English Language* 1862 (2nd ed.1987) (stature is "degree of development attained"). Whichever vague description was intended by the affiant, it must be weighed against the affiant's further statement that the victim could not identify his assailant. In fact, he did not know if he was attacked by one or more people. The magistrate was told, "When patrol arrived on scene, they briefly spoke with the victim who is believed to be T.J. Leavitt. Leavitt reported that he woke up to someone or some people in his home and someone attacked him with a knife. He stated that no one should've been in his home. He claimed to not know his attacker or attackers."

[¶ 29] Further regarding identification of the assailant, the magistrate was told, "This affiant spoke with Leavitt at the hospital. He described the attacker as having a pony-tail, the same stature as his wife. The victim could not specifically identify the attacker as his wife." The magistrate also was told the parties were in the process of divorcing. However, the affiant did not state the divorce was contentious or that the parties were hostile towards each other. To the contrary and without mentioning domestic violence, the affiant noted the parties "were separated, and they were sharing custody of their children." Majority opinion at ¶ 2.

[¶ 30] The majority cites these facts and others. *Id.* But the other facts were never connected to either Heather Leavitt or the home to be searched. Therefore, the required nexus between the facts and the place to be searched was glaringly absent and does not support issuance of a warrant. *See Nelson*, 2005 ND 59, ¶ 20,

693 N.W.2d 910 ("We conclude, under the totality of the circumstances, [the] affidavit did not contain sufficient reliable information to warrant a person of reasonable caution to believe contraband or other evidence sought would probably be found [at the property to be searched].").

[¶ 31] The facts unconnected to either Heather Leavitt or her home were (1) the assailant had a pony-tail, (2) the victim was in sole possession of the marital home, (3) bloody footprints were found in the home and throughout adjacent backyards, (4) a black stocking hat, darker blonde hair and a pony-tail band were found in the home, and (5) a description was provided of Heather Leavitt's vehicle and her home on the air force base. Majority opinion at ¶ 8.

[¶ 32] These facts were not connected to Heather Leavitt or her home that was searched because the magistrate was provided no evidence Heather Leavitt had a pony-tail. No evidence existed that Heather Leavitt continued to have a means of accessing the marital home, or even that the home was locked before the assault. No evidence showed the bloody footprints matched the size or any characteristic of Heather Leavitt's feet. The magistrate was offered nothing stating or even suggesting the trail of bloody footprints could have been left only by someone with familiarity with the home or the adjacent neighborhood. Nor was the magistrate given any information that Heather Leavitt owned a black stocking hat, that she had darker blonde hair or that the pony-tail band was used by or belonged to Heather Leavitt. The description of Heather Leavitt's home and car were statements of openly observable facts, and those common facts were not connected to the crime or the crime scene.

[¶ 33] Faced with this mass of unconnected facts, the majority necessarily "acknowledge[s] the facts alleged in the affidavit supporting this search warrant constitute a marginal case." Majority opinion at ¶ 11. They nonetheless conclude "there was a fair probability that evidence would be found on Heather Leavitt's person, in her vehicle, or in her home." Id. I cannot accede to that conclusion, and instead would hold the warrant was not supported by facts providing a sufficient nexus between the crime or the crime scene and a search of Heather Leavitt's home.

## II

[¶ 34] The good faith exception to the exclusionary rule was recognized by the United States Supreme Court's holding that exclusion of evidence is not required when law enforcement acts in good faith upon objectively reasonable reliance that a warrant was properly issued by a neutral and detached magistrate. *United States v. Leon,* 468 U.S. 897, 922–23 (1984). This Court held:

> "We have summarized four situations in which reliance cannot be objectively reasonable under *Leon* as:
>
> (1) when the issuing magistrate was misled by false information intentionally or negligently given by the affiant; (2) when the magistrate totally abandoned her judicial role and failed to act in a neutral and detached manner; (3) when the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when a reasonable law enforcement officer could not rely on a facially deficient warrant."

*State v. Dodson,* 2003 ND 187, ¶ 20, 671 N.W.2d 825 (citations and quotation marks omitted).

[¶ 35] The good faith exception recognizes that the exclusionary rule was designed to deter police misconduct and not

to punish the errors of magistrates. *State v. Utvick*, 2004 ND 36, ¶ 26, 675 N.W.2d 387. "[I]f there is no police misconduct to deter, the good-faith exception must apply and suppression is not the appropriate remedy." *Id.*

[¶ 36] Here, Heather Leavitt does not allege the issuing magistrate was misled by false information intentionally or negligently given by the affiant. She does claim the affidavit was inaccurate because the parties were separated and not yet divorcing, but that is not a material distinction in this case. Nor does Heather Leavitt argue the magistrate totally abandoned his judicial role and failed to act in a neutral and detached manner. Rather, she claims the magistrate made a mistake by concluding the affidavit provided probable cause to issue the warrant.

[¶ 37] On the basis of this record, neither the majority nor I conclude the affidavit was so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable. Rather, the majority concludes the affidavit was marginally sufficient and I respectfully suggest otherwise. But neither the majority holds nor do I suggest the affidavit was so lacking as to fail to provide any indicia of probable cause.

[¶ 38] Finally, neither the majority nor I conclude law enforcement unreasonably relied on a facially deficient warrant. Rather, Sergeant Goodman sought and obtained a search warrant from a neutral and detached magistrate. His reliance on that magistrate's probable cause determination was objectively reasonable and the warrant was not deficient on its face. As a result, no police misconduct exists to deter by suppression. Therefore, I would affirm the district court's denial of Heather Leavitt's motion to suppress based on the good faith exception to the warrant requirement.

[¶ 39] DANIEL J. CROTHERS

SANDSTROM, Justice, concurring specially.

[¶ 40] Although different magistrates and justices may look at the evidence differently, deference is given to factual inferences drawn by finders of fact. I offer my thoughts on some points of contention.

[¶ 41] The defendant and the victim were going through a divorce. The victim recognized the knife being used in the attack: "The victim stated the *knife was identical* to a set of knives he and his wife had, which were no longer in the marital residence, but rather in his wife's possession." (Emphasis added.) The victim described the attacker as "having a pony-tail, the same stature as his wife."

[¶ 42] The defendant relies on the definition in the online version of *Merriam–Webster's Collegiate Dictionary* 1220 (11th ed.2005) to say that stature means only height, and then to argue, in essence, that "height is not enough." Some may be surprised to read that stature means only height. Other dictionaries say that it can mean more. In *Webster's New World Dictionary* 1392 (2nd College ed.1980), stature is defined as "height or size of body." *The Random House Dictionary of the English Language* 1862 (2nd ed.1987) includes in its definition of stature "degree of development attained." Thesaurus.com includes "size" as a synonym for "stature." *Thesaurus.com*, http://www.thesaurus.com/browse/stature?s=t (last visited June 10, 2015).

[¶ 43] I view the evidence as stronger than others, and there were reasonable grounds—probable cause—to justify a warrant. I agree we affirm.

[¶ 44] DALE V. SANDSTROM